IN RE: DAVOL, INC./ C.R. BARD       Case No. 2:18-md-2846
INC., POLYPROPYLENE HERNIA
MESH PRODUCTS LIABILITY       CHIEF JUDGE EDMUND A. SARGUS
LITIGATION       Magistrate Judge Kimberly A. Jolson

This document relates to:
DONNA M. BARTOLOTTA
And BRUCE B. BARTOLOTTA

Plaintiff(s) DONNA M. BARTOLOTTA and BRUCE B. BARTOLOTTA file this Complaint pursuant to Case Management Order 1 and are to be bound by the rights, protections, and privileges and obligations of that Order.

Plaintiffs, DONNA M. BARTOLOTTA and BRUCE B. BARTOLOTTA, by their attorney, MARC J. BERN & PARTNERS LLP, complaining of the Defendant, respectfully allege upon information and belief:

## JURISTICTION AND VENUE

1.    This Court (Supreme Court of the State of New York, County of New York) has personal jurisdiction over Bard, pursuant to C.P.L.R.§302(a)(1), as nondomiciliary corporation transacting business, soliciting business, and deriving substantial revenue within the State of New York.

2.    Jurisdiction is proper in this Court pursuant to C.P.L.R. § 302(a)(3) because a substantial part of the events and omissions giving rise to Plaintiffs' causes of action occurred in the State of New York. Specifically, Plaintiffs are New York residents, Plaintiff DONNA M. BARTOLOTTA's product was purchased in New York, Plaintiff DONNA M. BARTOLOTTA's product was implanted in New York, and Plaintiffs' injuries occurred in New York.

3.    Further, jurisdiction is proper in this Court pursuant to C.P.L.R. § 302(a)(3), by virtue of the fact that Bard's product is produced in, sold to, and implanted in individuals in the

1

State of New York, thereby subjecting Bard to personal jurisdiction in this action. Plaintiffs' claim arises from Bard's presence and transactions in New York. Bard's activities within New York were purposeful and are substantially related to Plaintiffs' injuries, which occurred in New York. Bard, at all times relevant, regularly conducted and solicited, and continues to conduct and solicit, business in the State of New York through its agents, servants and employees, and because Defendant was engaged, and continues to engage, in marketing, distributing, promoting, and/or selling, either directly or indirectly, and/or through third parties or related entities, its products, including but not limited to its product, in New York. Bard, at all times relevant, engages, and continues to engage, in a persistent course of conduct in the State of New York. Bard derives substantial revenue from goods used or consumed or services rendered in the State of New York. Bard expects or should reasonably expect its actions and course of conduct to have consequences in the State of New York and derive substantial revenue from interstate and/or international commerce.

4.     Bard actively sells, markets and promotes its product (Composix™ L/P Mesh) to physicians and consumers in this state on a regular and consistent basis.

5.     Bard systematically availed itself of the State of New York by conducting regular and sustained business and engaging in substantial commerce and business activity in New York, including without limitation researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, and/or introducing into interstate commerce in the State of New York, either directly or indirectly, its products, including the Composix™ L/P Mesh. Bard should expect that its acts would have consequences within the United States, specifically, in the State of New York. Plaintiffs' claims arise from and relate to Bard's purposeful availment of the State of

New York because Bard's wrongful conduct in researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling the Composix™ L/P Mesh, took place, in whole or in part, in the State of New York. Therefore, the claims of these New York Plaintiffs relate to and arise from Defendant's explicit contacts and purposeful availment of the State of New York.

6.      Venue is proper pursuant to C.P.L.R § 509.

7.      Venue is proper in this Court pursuant to C.P.L.R. § 503, because Plaintiffs reside, and have at all relevant times resided, in the State of Germantown, New York.

8.      Venue is proper in this Court pursuant to C.P.L.R. § 503 because Bard is a corporation authorized to transact business in the State of New York.

## PARTIES

9.      Plaintiffs, DONNA M. BARTOLOTTA and BRUCE B. BARTOLOTTA, are individuals and residents of the State of New York.

10.     Plaintiffs reside at 4402 Route 9G Germantown, NY 12526.

11.     Defendant, C.R. Bard Inc., ("Bard" or "Defendant"), is a corporation organized and incorporated under the laws of New Jersey, with its principal place of business located at 730 Central Avenue, Murray Hill, New Jersey 07974.

12.     Bard has registered agents within the State of New York, Located at 289 Bay Rd, Queensbury, NY 12804.

13.     Bard derives substantial revenue from sales directed at and occurring within the State of New York, including Composix™ L/P Mesh ("Product" or "Defendant's product"), the subject of the present action.

14.     Defendant is and has been at all times pertinent to this proceeding, engaged in the

design and manufacturing of medical technologies used by surgeons to treat a variety of conditions, including, but not limited to, hernia repairs.

15.     Bard designed, manufactured, packaged, labeled, marketed, sold, and distributed the product at issue in this lawsuit.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

16.     Plaintiffs incorporate by reference all prior allegations.

17.     Plaintiffs are within the applicable statute of limitations for their claims because Plaintiffs, and Plaintiff DONNA M. BARTOLOTTA's health care professionals, did not discover, and could not reasonably discover, the defects and unreasonably dangerous side effects of Defendant's product.

18.     Plaintiffs' ignorance of the defective and unreasonably dangerous nature of the Composix™ L/P Mesh, and the causal connection between the defects and Plaintiffs' injuries and damages, is due in large part to Defendant's acts and omissions in fraudulently concealing information from the public and misrepresenting and/or downplaying the serious threats to public safety its product presents.

19.     In addition, Bard is estopped from relying on any statutes of limitation or repose by virtue of unclean hands, acts of fraudulent concealment, affirmative misrepresentations and omissions.

20.     Such conduct includes intentional concealment from Plaintiff, promotion to health care professionals, the general public, and the FDA of material information that the Composix™ L/P Mesh had not been demonstrated to be safe or effective, and carried with it the risks and dangerous defects described herein.

4

21.    Bard had a duty to disclose the fact that the Composix™ L/P Mesh was not safe or effective, was defective, unreasonably dangerous, and that being implanted with Composix™ L/P Mesh as a remedy to a hernia as well as measures of prevention from hernia recurrence carried the above-described risks.

## FACTUAL BACKGROUND

## I.    HERNIAS, HERNIA MESH PRODUCT AND KNOWN ALTERNATIVES

22.    A hernia is a medical condition caused by the penetration of fatty tissue, intestine, or organs through a weakened or compromised location in muscle of connective tissue.

23.    The most common types of hernias are: inguinal, hiatal, umbilical, ventral, incisional, and femoral hernias, most occurring near the abdominal wall.

24.    Lumbar hernias are a relatively infrequent type of ventral hernia. However, their treatment requires standard surgical procedures (laparoscopic or open repair surgery) and hernia meshes.

25.    Hernias sometimes manifest as visibly observable protrusions or bulges, and can cause the patient pain, discomfort, and decreased mobility.

26.    Hernias can be treated surgically, either by laparoscopic or open repair surgical procedures.

27.    Hernia repairs are common surgeries, and are performed more than one-million times per year in the U.S.

28.    The surgical mesh used to execute hernia repairs to damaged tissue can be constructed from synthetic or biologic materials and tissue.

29.    Synthetic surgical mesh is made of knitted or non-knitted sheets that can be absorbable, non-porous, or a combination of absorbable and nonabsorbable in composition.

30. Surgical mesh can be introduced to the hernia site to strengthen the repair.

31. Hernia mesh made from animal byproduct is usually derived from animal tissue sourced from skin or intestine and is designed to be absorbed into the human body upon use.

32. Non-absorbable mesh, made from synthetic materials, is promoted and used for permanent implantation in the body.

33. The most common injuries caused by hernia surgeries using hernia mesh are: pain, infection, adhesion of scar tissue sticking together, blockages that obstructed intestines, internal bleeding, fistula between organs (abnormal organ connection or fusion), seroma or fluid build-up at site, and perforation of other organs.

34. The hernia mesh that is introduced to the body, through this procedure, can cause serious injuries, including migration of the mesh and mesh shrinkage or contraction, as well as the aforementioned conditions.

35. Additional defects and known side effects of hernia mesh, as used for reinforcement and strengthening of hernia repairs, include:

    a. Mesh materials, as used, react to human tissues, organs and other body contents adversely.

    b. Mesh materials can harbor or cultivate infections, which can affect surrounding areas, tissues, and organs.

    c. Mesh material abrades bodily tissue and can cause erosion of tissue and organs surrounding the placement of the mesh implant.

    d. Mesh components routinely fail, malfunction or lose efficacy, resulting in serious adverse health implications, often requiring subsequent revision or removal surgery.

    e. Mesh material causes significant injury, extending to perforation of surrounding tissue and/or organs, adhesion to other tissue and/or organs, and nerve damage.

    f. Mesh material is intended to be rounded and reinforced to be safely cut, but when mesh is defective, it can become frayed, sharp, and protruding.

    g. Unreasonable risk of malfunction, injury and health consequences, such as: severe chronic pain, infection,

adhesion, intestinal blockages, migration of mesh, contraction/shrinkage of mesh, and requirement of repeat surgical intervention.

36.     In April of 2016, the FDA wrote and published an article on hernia mesh implants:

"Many complications related to hernia repair with surgical mesh that have been reported to the FDA have been associated with recalled mesh product that are no longer on the market. Pain, infection, recurrence, adhesion, obstruction, and perforation are the most common complications associated with recalled mesh."

37.     Safer and more effective alternatives to Bard's product (Composix™ L/P Mesh) exist and have existed since the introduction of its product into the market. These include the Shouldice Repair, McVay Repair, Bassini Repair, and Desarda Repair.

38.     Alternative designs for Bard's product (Composix™ L/P Mesh) and/or procedures existed that were and/or are less dangerous and equally, if not more, effective, including the use of polycarbonate and polystyrene as alternatives.

## II.     BARD's: COMPOSIX™ L/P MESH

39.     Bard's Composix™ L/P Mesh was designed, patented, manufactured, labeled, packaged, marketed, sold, and distributed by Bard at all relevant times herein.

40.     Bard was responsible for the research, design, development, testing, manufacture, production, marketing, packaging, promotion, distribution, and sale of the Composix™ L/P Mesh, as well as providing the warnings and instructions concerning the product.

41.     Among the intended purposed for which Bard designed, manufactured, marketed, and sold the Composix™ L/P Mesh was for the use by surgeons for hernia repair surgeries- the purpose for which the Composix™ L/P Mesh was implanted in the Plaintiff, Donna Bartolotta.

42.     Defendant's hernia mesh products are designed, intended, and utilized for permanent implantation in the human body.

7

43. The Composix™ L/P Mesh is a "low-profile, large pore, monofilament polypropylene/ePTFE" prosthesis, used for laparoscopic ventral hernia repair.

44. Among Defendant's advertising materials for the Composix™ L/P Mesh are statements including: "Soft, compliant, biocompatible knit structure," "Efficient," "Effective," and "Proven."

45. The Composix™ L/P Mesh is advertised as designed to encourage rapid tissue ingrowth for a strong repair and leave less foreign material in your body.

46. Bard's advertising material, found on their website at https://www.crbard.com/CRBard/media/ProductAssets/DavolInc/PF10146/en-US/q5useahbw78ghyu95b0v6ylacerl0stn.pdf promotes the Composix™ L/P Mesh and shows multiple photos of the knit mesh structure, the mesh itself as well as a complete list of all hernia mesh products in the same "family".

47. Bard represented to Plaintiff and Plaintiff's physicians that the Composix™ L/P Mesh was safe and effective for hernia repair and for permanent implantation in humans.

48. Bard applied for U.S. Food and Drug Administration ("FDA") clearance to market their Composix™ L/P Mesh under Section 510(k) of the Medical Device Amendment.

49. Section 510(k) allows for the marketing of medical devices, so long as the medical device or material is deemed substantially equivalent to other legally marketed predicate devices or materials without predicate devices without formal review for the safety of efficacy of the device.

50. Bard obtained clearance by a 510(k) application, submitted on October 5, 2006, and approved by the FDA on October 23, 2006 as 510(k) No: K061754 for the use in the reconstruction of soft tissue deficiencies, such as the repair of hernias.

51. In order to get approved, Bard claimed the Composix™ L/P Mesh is substantially equivalent to the Composix® E/X and Bard Large Pore Soft™ Mesh.

52. In promotional and information materials about the Composix™ L/P Mesh on Bard's website, the Composix™ L/P Mesh, is advertised as "just one of a complete family of hernia repair products," the brochure then goes on to list all hernia repair products Bard sells that are available to the public. Included in the list are Tissue Regeneration Product, Specialty Products and Fixation Products.

53. The FDA maintains an active compulsory database ("MAUDE DATABASE") of adverse incidents reported by medical providers regarding pharmaceutical implants and devices.

54. Every year, the FDA received hundreds of medical device reports ("MDRs") of suspected device-associated deaths, serious injuries, and malfunctions to contribute to the medical community's risk-benefit analysis of the use of certain devices.

55. MAUDE reports have been published documenting serious malfunctions of Bard's Composix™ L/P Mesh.

56. Among the MAUDE reports are documented instances of redness, severe abdominal pain, infection, incorporation into muscle layer, vomiting, and adhesions of the small intestine adherent to the underside of the mesh.

IV.     **PLAINTIFF SPECIFIC FACTS**

57. At all times relevant to this action Plaintiffs DONNA M. BARTOLOTTA and LOUIS TARDIO-GARIN were and are residents of the state of New York, 4402 Route 9G Germantown, NY 12526.

58. On September 23, 2011, Plaintiff DONNA M. BARTOLOTTA underwent a laparoscopic repair procedure of a supraumbilical hernia performed by Wayne Maben, M.D. and

9

assisted by Linda Allocco, FNA to introduce Bard's Composix™ L/P Mesh to reinforce tissue affected by the hernia.

59.     Composix™ L/P Mesh, manufactured and sold by Bard, was used for Plaintiff DONNA M. BARTOLOTTA'S surgery. Specifically, a Composix™ L/P Mesh, 4.2" x 6.2" (10.8cm x 15.9cm), Lot No.: HUUC0727, REF No.: 0134460, positively identified on surgical and operative reports prepared by Dr. Maben, was implanted into Plaintiff.

60.     Due to chronic and severe abdominal pain around the area of the implanted mesh, Plaintiff had to undergo a subsequent surgery.

61.     On or about November 11, 2015, Plaintiff underwent a subsequent surgery to repair a recurrent supraumbilical hernia. Specifically, a "Laparoscopic reduction and suture repair of torn mesh previously placed for hernia repair."

62.     It was in this surgery that Plaintiff's surgeon, Wayne Maben, M.D., discovered a defect in the mesh. Explicitly, a small hole within the midportion of the Composix™ L/P Mesh.

63.     Specifically, as noted in Maben's operative note, "…there is less than 1 centimeter, perhaps 0.7-centimeter defect in the previously placed mesh which is the area corresponding to the hernia."

64.     As a direct and proximate result of Bard's Composix™ L/P Mesh, Plaintiff DONNA M. BARTOLOTTA experienced excruciating and debilitating abdominal pain, resulting in the need for a subsequent surgery.  Plaintiff continues to experience abdominal pain for which she seeks and is treated with physical therapy.

65.     As a direct and proximate result of the implanted product into her body, Plaintiff DONNA M. BARTOLOTTA suffered, is suffering, and/or will continue to suffer the abovementioned injuries, including the risk of malfunction, decreased efficacy, recurrent hernia,

perforation of tissue and/or organs, adherence to tissue/organs, infection, nerve damage, subsequent surgeries, aggravation of a preexisting condition, and other complications.

66. As a direct and proximate result of the wrongful acts and omissions of Bard, Plaintiff DONNA M. BARTOLOTTA has suffered economic damages, severe and possibly permanent injuries, and emotional distress. Plaintiff has also endured and continues to suffer the mental anguish and psychological trauma of living with this defective product implanted in her body.

**COUNT I**
**STRICT LIABILITY – DEFECTIVE MANUFACTURE**

67. Plaintiffs incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

68. Bard placed its product, defined herein, into the stream of commerce with the actual or constructive knowledge that it would be used without inspection for defects.

69. Bard's product was defective in its manufacture.

70. At the time Composix™ L/P Mesh was implanted into Plaintiff, DONNA M. BARTOLOTTA, Bard's product was defective in its manufacture in that the product deviated from manufacturing standards when it came off the production line.

71. Bard's product failed to perform in its intended manner due to a flaw in the manufacturing process, evident by the defect recognized in the mesh and Plaintiff's injuries, which will be established by expert testimony.

72. There was an unreasonable risk that the product would not perform safely and effectively for the purpose for which it was intended, hernia repair.

73. Plaintiff was a reasonably foreseeable user of the product.

74. The Composix™ L/P Mesh was implanted into Plaintiff for the purpose of hernia repair; the specified purpose of such product.

75. Plaintiff and Plaintiff's physicians, through the exercise of reasonable care, would not have discovered the product defect or perceived its danger.

76. Plaintiff DONNA M. BARTOLOTTA and Plaintiff DONNA M. BARTOLOTTA's physicians, through the exercise of reasonable care, would not have been able to avert Plaintiff's injuries or damages associated with the use of this defective product.

77. As a direct and proximate result of the defective and unreasonably dangerous product, Plaintiff DONNA M. BARTOLOTTA has suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and interest on the foregoing injuries.

78. The foregoing losses and injuries are either permanent or continuing and Plaintiff will continue to suffer those losses in the future.

## COUNT II
## STRICT LIABILITY- DEFECTIVE DESIGN

79. Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

80. Bard placed its product, defined herein, into the stream of commerce with the actual or constructive knowledge that it would be used without inspection for defects.

81. At the time the Composix™ L/P Mesh was implanted into Plaintiff DONNA M. BARTOLOTTA, Bard's product was defective in its design.

82. The defects existed when the product was under the control of and distributed by the Bard.

83. Specifically, Microporous meshes such as those made with ePFTE, including the Composix ™ L/P Mesh, are at a higher risk of infection and seroma formation because bacteria are able to survive within the smaller pores.

84. Lightweight meshes, such as the Composix ™ L/P Mesh, are not able to adhere as strongly to the abdominal wall and cause a higher rate of recurrence.

85. The ePTFE barrier of the mesh is a chemical compound known as Expanded Polytetrafluorethylene.

86. Polytetrafluoroethylene is a synthetic plastic that when expanded becomes porous, allowing a current of small molecules such as air to pass through but not large enough for water molecules.

87. ePTFE has been made famous mostly for is use as a material within the DuPont Teflon® brand of non-stick cookware. It is also commonly used in breathable rain resistant clothing as wells as many industrial venting applications.

88. While it is praised for its versatility, thermal resistance and non-aging properties, it is inherently mechanically weak.

89. One of the purposes of the ePTFE barrier in medical implants is to filter out or act as a "vent" to any liquids and contaminants. This is intended to help prevent against infections.

90. However, when attached to knitted polypropylene, such as the design of the Composix™ L/P Mesh, the ventilation process does not compute as the particles will enter the ePTFE barrier and remain stuck therefore increasing the patient's risk of an infection.

91. Additionally, because of the non-biologic compound ePTFE is constructed from, the mesh cannot absorb properly into Plaintiff's abdominal wall.

13

92.     Furthermore, The Composix™ L/P Mesh is composed of knitted polypropylene monofilaments.

93.     Polypropylene is not meant for human permanent implantation.

94.     Polypropylene is a synthetic and nonabsorbable material; it is a cheap and plentiful petroleum-based plastic used to make indoor-outdoor carpets, car parts, and Tic-Tac box tops.

95.     Polypropylene mesh is unreasonably susceptible to degradation and fragmentation.

96.     As a result, polypropylene material is associated with injuries including but not limited to: chronic inflammation, adhesion, bowel perforation or erosion, fistula formation and bowel strangulation or hernia incarceration, and other injuries.

97.     Lastly, the product's knitted design creates small pores (holes) throughout the mesh.

98.     Nerves grow into these pores and attach to the mesh soon after implant.

99.     As the mesh erodes and migrates, it pulls and stretches the nerves attached to it.

100.    The nerves stretching causes debilitating pain; in addition, pain caused from nerves stretching is essentially unable to be treated.

101.    Because of defects in the Bard's product, it is, and at all times material hereto was, unreasonably dangerous.

102.    Alternative designs for Bard's product and/or procedures existed that were and/or are less dangerous and equally, it not more, effective, including the use of polycarbonate and polystyrene as alternatives.

103.    Bard owed a duty to Plaintiff DONNA M. BARTOLOTTA, Plaintiff's physicians, and others in the medical community and other foreseeable Plaintiffs.

104.    Bard breached that duty by marketing a product that was not reasonably safe.

14

105.    The defective design was a proximate cause of Plaintiff's injuries.

106.    Specifically, Plaintiff experienced excruciating abdominal pain in the area of the mesh implant due to a whole that formed in the mesh.

107.    Even through the exercise of reasonable care, Plaintiff and Plaintiff's physicians could not have discovered the defects and its perceived danger.

108.    Plaintiff DONNA M. BARTOLOTTA would not have been able to avert her injuries or damages through the exercise of reasonable care.

109.    The Composix™ L/P Mesh left Bard's hands in a condition not reasonably contemplated by the ultimate consumer and unreasonably dangerous for its intended use.

110.    At the time of the defects, Bard's product was being used for the purpose and manner normally intended; specifically, hernia repair.

111.    As a direct and proximate result of the defective and unreasonably dangerous product, Plaintiff DONNA M. BARTOLOTTA has suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and interest on the foregoing injuries.

112.    The foregoing losses and injuries are either permanent or continuing and Plaintiff will continue to suffer those losses in the future.

## COUNT III
## STRICT LIABILITY- FAILURE TO WARN

113.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

114.    The product (Composix™ L/P Mesh) implanted in Plaintiff DONNA M. BARTOLOTTA was defective and unreasonably dangerous when it left the possession of the Bard

15

in that it contained warnings which were inadequate and insufficient to alert physicians or consumers to the dangerous risks associated with the product, including, without limitation, extreme pain, risk of malfunction, decreased efficacy, recurrent hernia, perforation of tissue and/or organs, adherence to tissue/organs, infection, nerve damage, subsequent surgeries and other complications.

115.    The product implanted in Plaintiff was defective and unreasonably dangerous when it left the possession of the Defendant in that the Bard failed to include proper directions for use, implantation, and/or removal.

116.    Defendants knew or should have known through clinical trials and market studies that their products were unreasonably dangerous.

117.    Bard's product implanted in Plaintiff was used for its intended purpose, i.e., repair hernias through reinforcement.

118.    Plaintiff DONNA M. BARTOLOTTA's physicians, including the surgeons who performed the implant of the Bard's product, could not have discovered any defect with the product through the exercise of care.

119.    Plaintiff DONNA M. BARTOLOTTA's physicians, including the surgeon who performed the implant of Bard's product, did not have substantially the same knowledge that an adequate warning from the manufacturer or a distributor would have communicated.

120.    The warnings that were provided by Bard regarding its product were ambiguous or were not sufficient, accurate or clear.

121.    The warnings that were provided by Bard regarding its product did not contain specific warnings about the product, including but not limited to, the fact that Polypropylene is

unreasonably susceptible to degradation and fragmentation- the failure of the mesh in which Plaintiff DONNA M. BARTOLOTTA experienced.

122.     Bard had a continuing duty to warn Plaintiff DONNA M. BARTOLOTTA and her doctors of the dangers associated with its product.

123.     As a direct and legal result of the Bard's failure to warn, Plaintiff DONNA M. BARTOLOTTA has suffered serious bodily injuries, resulting in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and interest on the foregoing. The foregoing losses and injuries are either permanent or continuing and Plaintiff will suffer the losses in the future.

## COUNT IV
## NEGLIGENCE

124.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

125.     Bard owed a duty to Plaintiff DONNA M. BARTOLOTTA, and others similarly situated as foreseeable users of its product, to manufacture and sell its product in a reasonably safe manner for its intended use, free from defects.

126.     Bard owed a duty of care to Plaintiff, to adequately warn against the risks associated with the foreseeable uses of the product which Bard knew or should have known, including but not limited to:

> a.     the potential for perforation into human tissue; the potential to erode or "break down"; the potential to decrease in efficacy; the potential to cause patients observable abdominal bulging and pain many months after implantation; the potential for excessive scar tissue formation due to hernia mesh implantation, requiring future excision of scar tissue and lysis of adhesions; the potential for its product to overlie human tissue; muscle loss, weight gain, and/or continuous stomach pain associated with and/or

17

caused by its product; loss of bowel function; increased diarrhea and stool related issues; loss in mobility; and death.

127.    Bard was negligent in designing, manufacturing, and selling its product by, among other things, failing to properly fabricate the product, failing to adequately test the product, and failing to conduct adequate quality control procedures for the product.

128.    Bard breached its duty by failing to adequately warn Plaintiff DONNA M. BARTOLOTTA and/or her physicians and/or the medical community of, inter alia, the aforementioned risks associated with the product, and that failure directly caused Plaintiff DONNA M. BARTOLOTTA's injuries.

129.    As a direct and proximate result of the Bard's defective and unreasonably dangerous product, Plaintiff DONNA M. BARTOLOTTA has suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and interest on the foregoing. The foregoing losses and injuries are either permanent or continuing and Plaintiff will suffer the losses in the future.

## COUNT V
## BREACH OF EXPRESS WARRANTY

130.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

131.    Bard expressly warranted to Plaintiff DONNA M. BARTOLOTTA and Plaintiff's physicians that its product was safe and effective for the use of hernia repair.

132.    Specifically, Bard expressly warranted that its product, the Composix™ L/P Mesh, was "the gold standard product to be used in a 'tension-free' hernia repair technique."

133.   Bard expressly warranted the Composix™L/P mesh as "Proven," "Effective," "Efficient," "Compliant," and "Biocompatible."

134.   Bard's product was defective in its manufacture and design and was therefore, not fit for its intended use.

135.   Bard's product was defective in its manufacture and design and was therefore, not designed, manufactured, or sold in accordance with good design, engineering, and industry standards.

136.   Plaintiff DONNA M. BARTOLOTTA and Plaintiff's physician relied on these warranties when making the determination to use Bard's product for Plaintiff's hernia repair surgery.

137.   Bard breached the above warranties in that its product was defective as set forth above, was not fit for its intended use and was not designed, manufactured, or sold in accordance with good design, engineering and industry standards.

138.   As a direct and proximate result of Bard's defective and unreasonably dangerous product, Plaintiff DONNA M. BARTOLOTTA has suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and interest on the foregoing. The foregoing losses and injuries are either permanent or continuing and Plaintiff will suffer the losses in the future.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

139.   Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

140. Bard impliedly warranted to Plaintiff and all others similarly situated that its product was reasonably fit for its intended use and that it was designed, manufactured, and sold in accordance with good design, engineering, and industry standards.

141. Bard promoted and marketed its product for the purpose of hernia repair.

142. Bard impliedly warranted that its product was safe and effective for its particular purpose of hernia repair.

143. Plaintiff DONNA M. BARTOLOTTA's physicians opted to implant Bard's product into Plaintiff DONNA M. BARTOLOTTA for its intended purpose; specifically, hernia repair.

144. Plaintiff and Plaintiff's physicians relied on these warranties, and Bard's expertise, when making the determination to use the Composix™ L/P Mesh for Plaintiff's hernia repair surgery.

145. Bard breached the above warranties in that its product was defective as set forth above, was not fit for its intended use and was not designed, manufactured, or sold in accordance with good design, engineering and industry standards.

146. As a direct and proximate result of Bard's product, which was not suitable for its particular purpose, Plaintiff DONNA M. BARTOLOTTA has suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and interest on the foregoing. The foregoing losses and injuries are either permanent or continuing and Plaintiff will suffer the losses in the future.

<u>COUNT VII</u>
<u>NEGLIGENT MISREPRESENTATION</u>

147.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

148.     Bard had a duty to represent truthfully and accurately to the medical community, the FDA, and United States consumers accurately and truthfully, including Plaintiff DONNA M. BARTOLOTTA, the results of Bard's product testing.

149.     The misrepresentations made by Bard were false; Bard was careless or negligent in ascertaining the truth of the representations at the time Bard made the misrepresentations.

150.     Bard represented and marketed its product as being safe and effective.

151.     Bard represented and marketed its product as effective, efficient and biocompatible.

152.     The materials that make up Bard's mesh product are not, in fact, biocompatible.

153.     After Bard became aware of the risks of its product, Bard failed to accurately communicate those risks associated with its product.

154.     Bard failed to exercise ordinary care in the representation concerning its product and its manufacture, sale, testing, quality assurance, quality control, and distribution. Bard negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous, and adverse side effects associated with the administration, use, and implantation of the product.

155.     Bard breached its duty in representing to Plaintiff DONNA M. BARTOLOTTA, her physicians and health care providers, and the medical community, that its product did not carry the risk of serious side effects such as those suffered by Plaintiff and other similarly situated patients.

156. Bard breached its duty in representing to Plaintiff DONNA M. BARTOLOTTA, her physicians and health care providers, and the medical community, that its product was made out of safe, biocompatible materials.

157. Plaintiff DONNA M. BARTOLOTTA, Plaintiff's health care providers, physicians, and surgeons justifiably relied on Bard's negligent misrepresentations.

158. As a direct and proximate consequence of Bard's negligent misrepresentations, Plaintiff DONNA M. BARTOLOTTA has sustained serious personal injuries, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

## COUNT VIII
## FRAUDULENT MISREPRESENTATION

159. Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

160. Bard made misrepresentations of material fact from 2006 to present to Plaintiff DONNA M. BARTOLOTTA and her physicians, to induce them to use the Composix™ L/P Mesh for hernia repair, including:

   a. Defendant Bard's webpages pertaining to the Composix™ L/P Mesh, located at https://www.crbard.com/davol/en-US/products/Composix-L-P-Mesh includes an available "ComposixTM L/P Mesh Brochure" for the public to download, informing readers of the Composix™ L/P Mesh's clinical studies and new developments in the hernia mesh industry, found here https://www.crbard.com/CRBard/media/ProductAssets/Davo lInc/PF10146/en-US/q5useahbw78ghyu95b0v6ylacerl0stn.pdf. This also provides Product ID.
   b. Defendant Bard's website explicitly warrants the performance of Defendant's device as being based on the clinical success in minimizing tissue attachment of the "Bard ® submicronic permanent ePTFE barrier," which is one of the two sides to the mesh. The other side, the parietal side, "encourages rapid tissue

ingrowth for a strong repair while leaving less foreign material in the body."

    c. Defendant Bard's webpage includes a PDF ComposixTM L/P Mesh Technique Guide available for public download, located at https://www.crbard.com/CRBard/media/ProductAssets/DavolInc/PF10146/en-US/yrnludv5hsv5j0vdaj26ecw4q68wdnxv.pdf.

    d. Defendant Bard's lacks detailed warning about the known complications associated with the implantation of the Composix™ L/P Mesh but instead pertains very limited and inadequate warnings.

161.    Bard made false and misleading representations concerning the risks of Composix™ L/P Mesh in literature distributed to the medical community.

162.    Bard misrepresented material information regarding the Composix™ L/P Mesh by failing to disclose the known risks of its product and predecessor devices.

163.    Bard intentionally, willfully, knowingly, and fraudulently misrepresented to the medical community, the FDA, and consumers, including the Plaintiff DONNA M. BARTOLOTTA and her health care providers, that its product had been adequately tested in clinical trials and was found to be safe and effective.

164.    The information distributed by Bard to the public, including the Plaintiff, the medical community, and the FDA, included, but was not limited to, reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth regarding the dangers of the use of Bard's product.

165.    Plaintiff DONNA M. BARTOLOTTA's health care providers and medical facilities relied on the misrepresentations by Bard in the websites for its mesh.

166.    Bard made continuous misrepresentations regarding the safety and efficiency of its product to Plaintiff DONNA M. BARTOLOTTA's medical providers and medical facilities through "Dear Doctor" letters, and "Medical Information Letters," and when leaving the following

materials for doctors: promotional materials, folders with clinical studies in Bard's favor, and product samples. Bard also made such misrepresentations when hosting dinner events during which it promoted its product, continuing medical education events where it promoted its product, lectures where it promoted its product, and happy hours where it promoted its product. These promotional events occurred from 2006 to the present.

167.    Bard, as the designer and manufacturer of pharmaceutical implant devices, with ample resources and sophistication, had actual knowledge of all risks of the Composix™ L/P Mesh.

168.    Bard engaged in commercial conduct by selling the Composix™ L/P Mesh.

169.    Bard knew at the time it made its misrepresentations and omissions that they were false.

170.    Bard intended that Plaintiff would rely on its misrepresentations and omissions.

171.    In reliance upon Bard's false and fraudulent misrepresentations, through her physicians and healthcare providers, Plaintiff DONNA M. BARTOLOTTA was induced to, and did, reasonably rely upon Bard's misrepresentations and omissions regarding the safety and efficacy of Bard's product, resulting in Plaintiff DONNA M. BARTOLOTTA sustaining permanent personal injuries and damages.

172.    Bard had sole access to material facts concerning the defective nature of Composix™ L/P Mesh and its propensity to cause serious and dangerous injuries and damages to persons who used its product.

173.    Bard knew, and had reason to know, that its product could cause serious personal injury to those who received an implant, and that its product was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings given.

174. Bard made fraudulent misrepresentations and omissions intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and wellbeing of the users of its product, including Plaintiff.

175. Bard's wrongful conduct was fraudulent, deceitful, committed and perpetrated willfully, wantonly, and purposefully.

176. Bard's fraudulent misrepresentations and omissions were made with the intent of defrauding and deceiving the medical community and the public, including Plaintiff DONNA M. BARTOLOTTA, and to induce the medical community to recommend, dispense, and purchase Bard's product.

177. As a foreseeable, direct, and proximate result of Bard's described misrepresentations and omissions, Plaintiff DONNA M. BARTOLOTTA suffered the serious and dangerous side effects more specifically described elsewhere in her Complaint.

178. As a direct and proximate consequence of Bard's fraudulent misrepresentations, Plaintiff DONNA M. BARTOLOTTA sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

## COUNT IX
## CONSUMER FRAUD - VIOLATION OF GBL §349 and §350

179. Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

180. Bard acted, used and employed unconscionable commercial practices, deception, fraud, false pretenses, false promises and misrepresentations, and knowingly concealed, suppressed and omitted material facts with the intent that consumers, including Plaintiff DONNA

25

M. BARTOLOTTA herein and Plaintiff's physicians and medical providers, rely upon such concealment, suppression and omission, in connection with sale, advertisement and promotion of its product (Composix™ L/P Mesh), in violation of all applicable state consumer fraud statutes, for the purpose of influencing and inducing physicians and medical providers to implant the Bard's product (Composix™ L/P Mesh) to patients/consumers such as the Plaintiff herein.

181.    Because of Bard's unconscionable, deceptive and fraudulent acts and practices, and false pretenses, false promises and misrepresentations, reasonable patients/consumers acting reasonably, such as the Plaintiff herein, were caused to suffer ascertainable loss of money and property and actual damages.

182.    Bard engaged in consumer-oriented, commercial conduct by selling and advertising the subject product.

183.    Bard misrepresented and omitted material information regarding the subject product by failing to disclose known risks.

184.    Bard's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of New York General Business Law ("GBL") §§ 349 and 350.

185.    New York has enacted statutes to protect consumers from deceptive, fraudulent and unconscionable trade and business practices. Bard violated these statutes by knowingly and falsely representing that the subject product was fit to be used for the purpose for which it was intended, when Bard knew said product was defective and dangerous, and by other acts alleged herein.

186.    Bard engaged in the deceptive acts and practices alleged herein in order to sell the subject product to the public, including Plaintiff DONNA M. BARTOLOTTA.

187.    As a direct and proximate result of the Bard's violations of GBL §349 and §350, Plaintiffs suffered damages, for which Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

188.    As a direct and proximate result of Bard's conduct, the Plaintiff DONNA M. BARTOLOTTA used and/or had the product at issue (Composix™ L/P Mesh) and Plaintiff suffered serious physical injury, harm, and damages.

189.    Bard's actions and omissions as alleged in her Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

190.    The action falls within one or more of the exceptions set forth in CPLR 1602, and as such Bard is liable pursuant to the exceptions set forth in Article 16 of the C.P.L.R.

191.    Pursuant to C.P.L.R Section 1602(2)(iv), Bard is severally liable for all of Plaintiffs' damages, including but not limited to, Plaintiffs' non-economic loss, irrespective of the provisions of C.P.L.R. Section 1601, by reason of the fact that Bard owed Plaintiff DONNA M. BARTOLOTTA a non-delegable duty of care.

192.    Pursuant to C.P.L.R. Section 1602(2)(iv), Bard is liable for all of Plaintiffs' damages, including but not limited to, Plaintiff's non-economic loss, irrespective of the provisions of C.P.L.R. Section 1601, by reason of the fact that Bard is vicariously liable for the negligent acts and omissions of its servants, agents, affiliated physicians, surgeons and/or employees.

193.    Pursuant to C.P.L.R. Section 1602(7), Bard is severally liable for all of Plaintiffs' damages, including but not limited to Plaintiffs' non-economic loss, irrespective of the provisions

of C.P.L.R. Section 1601, by reason of the fact that said Bard acted with reckless disregard for the safety of others.

194.    By reason of the foregoing, Plaintiffs have been damaged in an amount that exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction in her matter.

## CLAIM X
## LOSS OF CONSORTIUM
### (Plaintiff BRUCE B. BARTOLOTTA, against DEFENDANT)

195.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead this Count in the broadest sense, pursuant to all laws that may apply pursuant to the choice of law principles, including the law of the Plaintiffs' resident State.

196.    At all relevant times hereto, where applicable, Plaintiff DONNA M. BARTOLOTTA was married to Plaintiff BRUCE B. BARTOLOTTA, and they continue to be married.

197.    Spouse Plaintiffs, Family Member Plaintiffs, and/or intimate partners of the aforesaid Plaintiffs, such as Plaintiff BRUCE B. BARTOLOTTA, have suffered injuries and losses as a result of Plaintiff DONNA M. BARTOLOTTA's injuries from the implantation of Bard's Composix™ L/P Mesh

198.    For the reasons set forth herein, Plaintiff BRUCE B. BARTOLOTTA has necessarily paid and has become liable to pay for medical aid, treatment, monitoring, medications, and other expenditures and will necessarily incur further expenses of a similar nature in the future as a proximate result of Bard's misconduct.

199.    For the reasons set forth herein, Plaintiff BRUCE B. BARTOLOTTA suffered and will continue to suffer the loss of her loved one's support, companionship, services, society, love and affection.

200.    Plaintiffs allege that their marital relationship was impaired and depreciated, and the marital association between husband and wife has been altered.

201.    Plaintiffs have suffered great emotional pain and mental anguish.

202.    As a direct and proximate result of Bard's wrongful conduct, Plaintiffs had challenges with engaging in sexual intercourse due to plaintiff DONNA M. BARTOLOTTA'S easily triggered pain. Plaintiffs do not engage in intercourse as frequently, if at all, due to the pain and medical complications following the implant of Bard's Composix™ L/P Mesh.

203.    As a direct and proximate result of Bard's wrongful conduct, Spouse Plaintiffs, Family Member Plaintiffs, and/or intimate partners of the aforesaid Plaintiffs, have sustained and will continue to sustain severe physical injuries, severe emotional distress, economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

204.    Bard is liable to Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners jointly and severally for all general, special and equitable relief to which Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners are entitled by law.

## COUNT XI
## UNJUST ENRICHMENT

205.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

206.    Bard was, and at all times was, the manufacturers, sellers, suppliers, distributors, marketers, and/or dealers of the Composix™ L/P Mesh

207.    Plaintiff DONNA M. BARTOLOTTA paid for Bard's product for the purpose of hernia repair.

208.    Bard has accepted payment from Plaintiff for the purchase of its product, and was, therefore, unjustly enriched.

209.    Plaintiff has not received the safe and effective product for the hernia repair material for which she paid whereas Bard was unjustly enriched in the form of payment for this product.

210.    By reason of the foregoing, Plaintiffs have been damaged in an amount that exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction in this matter.

### COUNT XII
### PUNITIVE DAMAGES

211.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

212.    Bard sold its product to the healthcare providers of Plaintiff DONNA M. BARTOLOTTA and other health care providers in the state of Plaintiff's implantation (New York) and throughout the United States without doing adequate testing to ensure that this product was reasonably safe for implantation in the abdominal area.

213.    Bard sold the product to Plaintiff's health care providers and other health care providers in the state of the implantation (New York) and throughout the United States despite its knowledge that its product can disintegrate and/or degrade inside the body, and cause the other problems heretofore set forth in this complaint, thereby causing severe and debilitating injuries suffered by Plaintiff and numerous other patients.

214.    Bard ignored reports from patients and health care providers throughout the United States and elsewhere of its product's failures to perform as intended, which led to the severe and

debilitating injuries suffered by Plaintiff and numerous other patients. Rather than doing adequate testing to determine the cause of these injuries, or to rule out its product's design or the processes by which its product is manufactured as the cause of these injuries, Bard chose instead to continue to market and sell its product as safe and effective.

215.    Bard withheld material information from the medical community and the public in general, including the Plaintiff, regarding the safety and efficacy of its product.

216.    Bard knew and recklessly disregarded the fact that its product caused debilitating and potentially life altering complications with greater frequency than feasible alternative methods and/or products used to treat hernias.

217.    Bard misstated and misrepresented data and continues to misrepresent data so as to minimize the perceived risk of injuries caused by its product.

218.    Notwithstanding the foregoing, Bard continues to aggressively market its product to consumers, without disclosing the true risks associated with its product.

219.    Bard knew of its product's defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell its product so as to maximize sales and profits at the expense of the health and safety of the public, including the Plaintiff DONNA M. BARTOLOTTA.

220.    Bard continues to conceal and/or fail to disclose to the public, including the Plaintiff DONNA M. BARTOLOTTA, the serious complications associated with the use of its product to ensure continued and increased sales of its product.

221.    Bard's conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against the Defendant herein in an amount that exceeds the jurisdictional limitations of all lower courts that would otherwise have jurisdiction over this action, together with the interest, costs and disbursements of same allowed by law.

Dated: New York, New York
October 24, 2018

MARC J. BERN &PARTNERS LLP
Attorneys for Plaintiff

_Alexandra Colella_

Alexandra Colella, Esq.

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK    )
                             ) ss:
COUNTY OF NEW YORK  )

ALEXANDRA COLELLA, an attorney and counselor at law, duly admitted to practice in the Courts of the State of New York and a member of the firm, MARC J. BERN & PARTNERS LLP, attorneys for Plaintiff herein, affirms the following to be true under penalties of perjury:

I have read the foregoing VERIFIED COMPLAINT and know of the contents thereof, and upon information and belief, I believe the matters alleged therein to be true.

The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff reside in a county other than the one in which your deponent's office is maintained. The source of your deponent's information and the grounds of by belief are communications, papers, reports and investigations contained in my files.

Dated:  New York, New York
October 24, 2018

MARC J. BERN & PARTNERS LLP
*Attorneys for Plaintiff*

By: Alexandra Colella
Alexandra Colella, Esq.
One Grand Central Place
60 East 42nd Street, Suite 950
New York, New York 10165
(212) 702-5000