# UNITED STATES DISTRICT COURT
# THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>Judge Edmund A. Sargus, Jr.<br>Magistrate Judge Kimberly A. Jolson |

**This document relates to:**
**ALL CASES.**

## OPINION AND ORDER

This matter is before the Court on the Notice of Plaintiffs' Steering Committee's Petition for Expedited *In Camera* Review of Challenges to Documents Listed on Defendants' Privilege Log 1 and 2 Pursuant to CMO No. 17 (Doc. 218). The Court construes the Notice as a Motion to Compel. For the following reasons, the Motion is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

The parties' dispute centers on a number of documents that Defendants initially withheld as privileged. The Court addressed the majority of these documents during a telephonic status conference with the parties on September 12, 2019, and granted Defendants the opportunity to submit a brief addressing the two remaining documents, MPPE-08482702 and MPPE-08473004.

MPPE-08482702 is a 2013 email thread about a Bloomberg News Article discussing a trial concerning Defendant Bard's polypropylene mesh. Defendants have agreed to produce a redacted version of that email thread but maintain that one of the emails in that thread is, in fact, privileged. The purportedly privileged email is from Gary Dolch (the "Dolch Email"), Defendant Bard's Vice President of Quality, to a number of high-level executives at Defendant Bard, including Greg Dadika (Associate General Counsel), Andrea Casper (Vice President Regulatory

Affairs), John DeFord (Senior Vice President, Technology & Clinical Affairs), Tim Ring (Chairman and CEO), John Weiland (Vice Chairman, President and Chief Operating Officer), John Groetelaars (Group Vice President), and Peter Curry (President Bard Medical Division). The Dolch Email was also sent to John Lowry at Cardinal Health. Generally, the Dolch Email outlines a plan for gathering information to issue a press statement in response to the Bloomberg News article.

MPPE-08473004 is an email thread regarding a meeting at Defendant Bard's Law Department (the "Simunovich Email"). It was sent to, among others, Ami Simunovich, Associate General Counsel, Regulatory & Compliance, for Defendant Bard. Although initially Defendants withheld this document, they have agreed to produce it "as long as there is no waiver of attorney-client privilege as to the [attached] PowerPoint presentation or the substance of the meeting itself."

Defendants have submitted an *Ex Parte* Response to the PSC's Motion. The Motion is, therefore, ripe for resolution.

## II.     STANDARD OF REVIEW

"Determining the proper scope of discovery falls within the broad discretion of the trial court." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The burden of establishing the attorney-client privilege rests with the party asserting it." *M.H. v. Akron City Sch. Dist. Bd. of Educ.*, No. 5:18-CV-870, 2019 WL 4346274, at *1 (N.D. Ohio Sept. 12, 2019) (citing *Columbia/HCA Healthcare Corp. Billing Practices Litig.*,

293 F.3d 289, 294 (6th Cir. 2002)); *see also McCall v. Procter & Gamble Co.*, No. 1:17-CV-406, 2019 WL 3997375, at *2 (S.D. Ohio Aug. 22, 2019) ("The burden of establishing a claim of privilege rests with the party asserting it … If a claim of privilege is challenged, the party asserting it must establish each element by competent evidence." (internal citations omitted)).

### III. ANALYSIS

#### A. Choice of Law

At the outset, the Court must determine what law governs Defendants' claims of privilege. The PSC appears to rely on general common law principles to support its Motion. (*See, e.g.*, Doc. 218 at 5–6 (citing Sixth Circuit case law regarding privilege)). In contrast, Defendants maintain that New Jersey state law controls the privilege analysis.

Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Determining which state law applies "is complicated in the MDL context, where cases originate in many different states." *In re: Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-2641 PHX DGC, 2016 WL 3970338, at *1 (D. Ariz. July 25, 2016); *see also In Re Conagra Peanut Butter Prod. Liab. Litig.*, No. 1:07 MD 1845 TWT, 2009 WL 799422, at *1 (N.D. Ga. Mar. 24, 2009) (acknowledging that the choice of law analysis in an MDL can be "very complicated" because of the number of different states involved). Courts have applied varied approaches to address this issue. *See Bard IVC Filters*, 2016 WL 3970338, at *2 (looking to the transferor states' choice of law rules to determine privilege law to apply and applying the Restatement's most significant relationship test "as best representative of the choice of law rules applied by the various states"); *U.S. Surety Co. v. Stevens Family Ltd.*, No. 11-C-7480, 2014 WL 902893, at *1 (N.D. Ill. Mar. 7, 2014) (applying the privilege law of the state that supplies the substantive rule of decision); *In re*

*Vioxx Prods. Liab. Litig.*, MDL No. 1657, 501 F. Supp. 2d 789, 791–92 (E.D. La. 2007) (applying generally-known principles of the attorney-client privilege); *In re Baycol Prods. Litig.*, MDL No. 1431, 2003 WL 22023449, at *1–2 (D. Minn. Mar. 21, 2003) (applying the choice-of-law rules of the state where the transferee court sits).

The Court adopts the *Bard IVC Filters*' approach. Although future briefing may lead the Court to reconsider this decision, it is satisfied that the choice of law analysis is of limited significance here because the dispute between the party is resolved by basic principles of privilege that are similar, if not identical, regardless of the source of the law being applied. *See Conagra Peanut Butter*, 2009 WL 799422, at *1 (citation and alteration omitted) ("For purposes of this motion, the elements of the attorney-client privilege are well-known and are not, in any material respect, disputed here.").

Under the *Bard IVC Filters*' approach, "the law of the state with the most significant relationship to the communication will govern the existence and scope of attorney-client privilege." 2016 WL 3970338, at *1 (citation and quotations omitted). Here, Defendant Bard is headquartered in New Jersey, and the communication took place among Defendant Bard's high-level executives, who were presumably working from headquarters. The Court applies New Jersey's privilege law accordingly. *See* Restatement (Second) of Conflict of Laws § 139, Comment e (Am. Law Inst. 1971) ("The state which has the most significant relationship with a communication will usually be the state where the communication took place, which, as used in the rule of this Section, is the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing … If there was such a prior relationship between the parties, the state of most significant relationship will be

that where the relationship was centered unless the state where the communication took place has substantial contacts with the parties and the transaction.").

B.  **New Jersey Privilege Law**

"New Jersey's attorney-client privilege attaches to communications made between lawyers and clients 'in the course of that relationship and in professional confidence.'" *JNL Mgmt. LLC v. Hackensack Univ. Med. Ctr.*, No. 2:18-CV-5221-ES-SCM, 2019 WL 2315390, at *3 (D.N.J. May 31, 2019) (quoting N.J.S.A. 2A:84A–20(1)). "[T]he attorney-client privilege generally applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." *Hedden v. Kean Univ.*, 82 A.3d 238, 244 (N.J. Super. Ct. App. Div. 2013) (citation omitted); *see also* Restatement (Third) of the Law Governing Lawyers § 68 (2000) (same).

"The privilege extends to corporations and permits communications between an attorney and a corporation's employees to be protected." *JNL Mgmt.*, 2019 WL 2315390, at *3 (citing *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990)). It "is not strictly limited to legal advice, but applies only to 'situations in which lawful legal advice is the object of the relationship.'" *JNL Mgmt.*, 2019 WL 2315390, at *3 (quoting *Rivard v. Am. Home Prods., Inc.*, 917 A.2d 286, 300 (N.J. Super. Ct. App. Div. 2007)).

"Importantly, business advice is not protected by the attorney-client privilege because '[o]nly if an attorney is acting as a lawyer and giving advice with respect to the legal implications of an issue may the privilege be properly invoked.'" *JNL Mgmt.*, 2019 WL 2315390, at *3 (quoting *In re Riddell Concussion Reduction Litig.*, No. 13-7585, 2016 WL 7108455, at *4 (D.N.J. Dec. 5, 2016)). "This rule appears straight-forward, yet 'its application is difficult, since in the corporate community, legal advice is often intimately intertwined with and difficult to distinguish from

5

business advice.'" *JNL Mgmt.*, 2019 WL 2315390, at *3 (quoting *Leonen*, 135 F.R.D. at 98–99). "In determining whether advice is in the business versus legal context 'the court's inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as *predominately* legal.'" *JNL Mgmt.*, 2019 WL 2315390, at *3 (quoting *Leonen*, 135 F.R.D. at 99) (emphasis added); *see also* 1 Paul R. Rice et al., Attorney-Client Privilege: State Law New Jersey § 7:6 (2018) (citing *Hedden*, 82 A.3d at 245) ("Consistent with federal practice, New Jersey law considers the attorney-client privilege to apply only where the primary purpose of the communication is to obtain legal advice."); 1 Edna Selan Epstein, Attorney-Client Privilege & the Work-Product Doctrine III.E4.A (6th ed. 2017) ("For the communication to be privileged, it must have been made primarily for the purpose of obtaining legal advice or services from the attorney."). Ultimately, "[t]he claimant of the privilege 'must demonstrate that the communication would not have been made but for the client's need for legal advice or services.'" *JNL Mgmt.*, 2019 WL 2315390, at *3 (quoting *Leonen*, 135 F.R.D. at 99); *see also* 1 Edna Selan Epstein, Attorney-Client Privilege & the Work-Product Doctrine III.E4.A (6th ed. 2017) ("How do courts go about determining whether the primary purpose of the communication was or was not to give legal advice? A frequent formulation is, would the communication have been made 'but for' the fact that legal advice was sought? If it would not, it will be privilege protected. If it would have been made in all events, the communication will generally not be privilege protected.").

### C. The Dolch Email

Although Defendants seek to redact the Dolch Email, in the Court's view, its primary purpose was to develop business strategy, specifically a strategy for Defendant Bard's public response to the Bloomberg News article. Mr. Dolch addressed the communication to a number of Defendant Bard's high-level executives and identified information that he believed should be

6

included in any new press statement regarding the Bloomberg News article. It contains no explicit request for legal advice, and, on the evidence before the Court, any implicit request for legal advice is, at best, a secondary purpose of the Email. As a result, Defendants have failed to meet their burden to demonstrate that the Dolch Email was "designed to meet problems which can fairly be characterized as predominately legal" or that it "would not have been made but for the client's need for legal advice or services." *JNL Mgmt.*, 2019 WL 2315390, at *3 (citation and internal quotations omitted); *see also Rowe v. E.I. duPont de Nemours & Co.*, No. CIV.06-1810-RMD-AMD, 2008 WL 4514092, at *9 (D.N.J. Sept. 30, 2008) (rejecting claim of privilege because "DuPont has not demonstrated that legal advice was the predominant purpose for this e-mail").

Indeed, the only evidence supporting the argument that the Dolch Email is potentially privileged is the fact that it was addressed to Mr. Dadika, Defendant Bard's in-house counsel, and labeled "Privileged Attorney – Client Communication." But the law is clear the attorney-client "privilege does not apply simply because an attorney was involved in communications." *JNL Mgmt.*, 2019 WL 2315390, at *3 (citing *Riddell Concussion Reduction*, 2016 WL 7108455, at *3); *see also United Jersey Bank v. Wolosoff*, 483 A.2d 821, 826 (N.J. Super. Ct. App. Div. 1984) ("The mere fact that Mulligan is an attorney and served as the bank's in-house counsel is clearly insufficient. So too, that Mulligan's employment duties may have included responsibilities pertaining to pending litigation is not enough, by itself, to compel application of the privilege. Rather, judicial scrutiny must focus upon both the nature of the relationship between Mulligan and others and the type of information or communication involved."). And Mr. Dolch's use of the "Privileged Attorney – Client Communication" label is insufficient to establish privilege absent

something more. As a result, the Court finds that the Dolch Email is not privileged, and Defendants are **ORDERED** to produce MPPE-08482702 in its entirety.

Even if the Dolch Email were privileged, Defendants would still be required to produce it. "Privilege can be waived if the holder, 'contracted with anyone not to claim the right or privilege or, [ ] without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.'" *Ashland Inc. v. G-I Holdings Inc.*, No. A-4356-17T3, 2019 WL 1552750, at *2 (N.J. Super. Ct. App. Div. Apr. 10, 2019) (quoting N.J.S.A. 2A:84A-29). "It follows, that '[t]he attorney-client privilege is ordinarily waived when a confidential communication between an attorney and a client is revealed to a third party' unless the third party's presence 'is necessary to advance the representation.'" *Ashland*, 2019 WL 1552750, at *2 (quoting *O'Boyle v. Borough of Longport*, 94 A.3d 299, 309 (N.J. 2014)); *see also Matter of Adoption of Twp. of Monroe*, No. A-2471-15T2, 2017 WL 3013358, at *5 (N.J. Super. Ct. App. Div. July 17, 2017) (quoting *O'Boyle*, 94 A.3d at 310) ("[T]he 'presence of a stranger negates the privilege for communications made in the stranger's presence.'").

As previously noted, the Dolch Email was addressed to, among others, a third-party, John Lowry, a Cardinal Health employee. As a result, even if the Dolch Email was privileged, Defendants waived it here. *See Ashland*, 2019 WL 1552750, at *2.

Defendants' arguments to the contrary are unpersuasive. First, they argue, Federal Rule of Evidence 502(b) protects the privilege here because the disclosure of the Dolch Email to Mr. Lowry was inadvertent. But Rule 502(b) concerns inadvertent disclosure "[w]hen made in a federal proceeding or to a federal office or agency." Fed. R. Evid. 502(b). In other words, Rule 502(b) limits the consequences of inadvertent disclosure during the course of discovery. Because no federal proceeding was ongoing at the time of disclosure, and because the disclosure was not

made to a federal office or agency, Rule 502(b) does not apply in this instance. Moreover, Defendants have not presented any evidence to support this argument. *Cf.* 1 Paul R. Rice et al., Attorney-Client Privilege: State Law New Jersey § 9:22 ("The party claiming the privilege normally bears the burden of showing that it was not waived, following the presentation of a prima facie case of waiver by the opponent.").

Second, Defendants contend that, "[e]ven if Mr. Dolch meant to copy John Lowry on the email, the privilege is still maintained because Cardinal Health, a distributor for Bard, had a confidential relationship with Bard." Although they are not explicit, it appears Defendants are attempting to invoke the common interest rule, which "permits disclosure of privileged material, attorney-client confidential communications or work product, to third parties without waiving any privilege as long as the applicable features of the common interest rule in the jurisdiction are satisfied." *O'Boyle*, 94 A.3d at 316. But that rule requires any disclosure of privileged information to be "made due to actual or anticipated litigation for the purpose of furthering a common interest," and "in a manner to preserve the confidentiality of the disclosed material and to prevent disclosure to adverse parties." *Id.* at 317. And Defendants have offered no evidence demonstrating that those requirements are satisfied here. *Cf. Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008) (citing *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers*, 202 F.R.D. 418, 423 (E.D. Pa. 2001)) (holding that the party asserting common interest exception to rule that disclosure to third party waived attorney-client privilege bears "the burden to show that attorney-client privilege has not been waived").

D.     **The Simunovich Email**

Defendants have agreed to produce the Simunovich Email "as long as there is no waiver of attorney-client privilege as to the [attached] PowerPoint presentation or the substance of the

9

meeting itself." Consistent with those reservations, Defendants are **ORDERED** to produce the Simunovich Email in its entirety.

## IV. CONCLUSION

For the foregoing reasons, the PSC's Motion to Compel (Doc. 218) is **GRANTED in part and DENIED in part**. Defendants are **ORDERED** to produce MPPE-08482702 and MPPE-08473004 in their entirety.


Date: September 19, 2019     /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE