UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Kimberly A. Jolson |

This document relates to:
*Johns v. CR Bard et al*,
Case No. 2:18-cv-01509

## EVIDENTIARY MOTIONS ORDER NO. 2

### Bard's Motion to Strike Plaintiff's Expert Ahmed El-Ghannam, Ph.D.'s Supplemental Reports and Reliance Lists

This matter is before the Court on Defendants Davol Inc. and C.R. Bard, Inc.'s (collectively "Bard") Motion to Strike Plaintiff's Expert Ahmed El-Ghannam, Ph.D.'s supplemental reports and reliance lists. (*Johns* ECF No. 40.) The motion has been fully briefed on an expedited basis (ECF No. 56, 67) and is now ripe for decision. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Bard's Motion.

### I.

Plaintiff Steven Johns' trial is the first bellwether trial of the thousands of cases in this multidistrict litigation ("MDL") and is scheduled to commence on May 11, 2020. The Judicial Panel on Multidistrict Litigation described the cases in this MDL as follows:

> All of the actions share common factual questions arising out of allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections.

(Transfer Order, MDL ECF No. 1.) Ventralight ST is a prescription medical device used for

hernia repair and is one of Bard's products at issue in this MDL. It is a multicomponent device made of a mesh of polypropylene, polyglycolic acid (PGA) fibers, and a bioresorbable coating called Sepra Technology ("ST"). (Bard's Mot. for Summary Judgment, ECF No. 29 at 3.) The bioresorbable coated side of the mesh is placed against organs, such as the bowels, while the uncoated polypropylene side is placed to maximize tissue attachment to support the hernia repair. (*Id.* at 4.)

Plaintiff contends that Bard knew the component parts of the mesh were dangerous and unsafe for use in medical devices. (Pl's Opp. to Mot. for Summary Judgment, ECF No. 69 at 1.) According to Plaintiff, Bard knew that polypropylene is not suitable for permanent implantation in the human body, that the ST coating resorbs too quickly, and that the PGA fibers created an increased inflammatory response. (*Id.*)

Plaintiff brings this action to recover for injuries sustained as a result of the implantation of Bard's defective Ventralight ST. (*Id.*) Plaintiff was diagnosed with a symptomatic ventral hernia within a diastasis recti at the age of 58 in July 2015. (*Id.* at 9.) Plaintiff underwent surgery to repair the hernia and diastasis in August 2015, and Plaintiff's doctor implanted Plaintiff with Ventralight ST Mesh. (*Id.*) Plaintiff's symptoms returned several months later, and he underwent a second surgery in October 2016. (*Id.*) During that surgery, Plaintiff's doctor observed omental adhesions to the original Ventalight ST and performed "lengthy arthroscopic [sic] lysis of the dense omental adhesions from the prior mesh implant." (*Id.*) Plaintiff's doctor then removed the original device and implanted another Ventralight ST. (*Id.*) Plaintiff was diagnosed with another hernia within the diastasis recti in April 2019 and underwent a third surgery that month to repair the hernia, but the second Ventralight ST device was not removed. (*Id.*)

Plaintiff contends the omental adhesions discovered in his second surgery were a result of

2

the failure of the ST barrier on the Ventralight ST Mesh, and that the continued presence of the second Ventralight ST mesh currently inside his body continues to threaten his health and well-being and cause pain. (*Id.* at 10-11.) He claims it is probable he will need additional surgery for either chronic pain or possible complications, such a bowel obstruction or fistulization. (*Id.*)

Plaintiff offers the testimony of Ahmed El-Ghannam, Ph.D., "related to the design and manufacture of Defendants' polypropylene mesh products (including the Ventralight ST mesh), the application of Defendants' polypropylene mesh products and their interaction with the human environment, and the lack of their biocompatibility." (*See* Pl's Opp. to Mot. to Exclude, ECF No. 73.) Pursuant to Case Management Order 20-A (MDL ECF No. 274), expert reports for the six bellwether trial pool cases were due on December 4, 2019. Plaintiff served an expert report for Dr. El-Ghannam on December 5, 2019, and on January 27, 2020, Dr. El-Ghannam was deposed.

On February 6, 2020, Bard moved to exclude Dr. El-Ghannam's testimony under, *inter alia*, Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (*See* Mot. to Exclude, ECF No. 33.) The next day, on February 7, 2020, Plaintiff served a supplemental expert report and reliance list for Dr. El-Ghannam dated February 6, 2020. On February 10, 2020 Plaintiff served Dr. El-Ghannam's rebuttal report and reliance list intended to rebut the opinions of Bard's materials expert Dr. Maureen Reitman. Bard now seeks to strike both the February 6 supplemental report and reliance list and the February 10 rebuttal report and reliance list under Federal Rule of Civil Procedure 37(c)(1).

Bard contends that both reports "present new opinions, analysis, and even data" that were available to Dr. El-Ghannam before his original expert was due and/or to address at his deposition. (Mot. to Strike, ECF No. at 4.) Bard argues that "Plaintiff's attempt to retroactively support Dr. El-Ghannam's prior opinions, and to disclose entirely new opinions after the report

3

deadline and his deposition violates the Federal Rules, this Court's CMOs, and fundamental fairness." (*Id.*) Moreover, Bard claims that "Plaintiff served these supplemental reports after Bard moved to exclude Dr. El-Ghannam's opinions in compliance with the Court's CMOs" and that "[i]f Plaintiff can shore up expert opinions at this point, then all parties must be permitted to revisit their experts, the evidence in this case, discovery, and their bellwether case selection." (*Id.*)

Bard also provides several specific examples of additional information included in Dr. El-Ghannam's supplemental reports where it claims Dr. El-Ghannam is attempting to "cure woefully deficient testimony, respond to criticisms of his methodology, and to provide new and additional opinions to buttress his claims":

> For example, at deposition Dr. El-Ghannam was unable to recall any published literature that used DRFITS-FTIR to analyze polypropylene synthetic mesh for possible oxidative degradation. El-Ghannam Dep. at 68:6-12. The supplemental reports include an extensive discussion of DRFITS-FTIR, including multiple cites to literature that Dr. El-Ghannam claims supports the validity of his approach. *See* Feb. 6 Report at 1-10; Feb. 10 Report at 1-10. None of this literature was cited in Dr. El-Ghannam's original report, despite that fact that it was all published and available to him at that time. Indeed, across both supplemental reports Dr. El-Ghannam cites an additional 136 articles, 63 of which were not cited in his original report.
>
> Similarly, Dr. El-Ghannam was unable to identify the FTIR spectra where protein amides would likely appear. El-Ghannam Dep. at 43:22-44:2. His supplemental reports now include a specific discussion of amide bands and FTIR. Feb. 6 Report at 15-16; Feb. 10 Report at 30-31. Dr. El-Ghannam was also unable to identify the antioxidants present in the polypropylene resin used to make Bard's hernia mesh devices. El-Ghannam Dep. at 40:1-41:3. His supplemental reports now include a discussion of antioxidants and how he claims they may leach out of certain materials. Feb. 6 Report at 25, 36-38; Feb. 10 Report at 40, 56-59.
>
> Importantly, Dr. El-Ghannam's original report did not include any reference to or reliance on prior work. This includes testing Dr. El-Ghannam performed on polypropylene pelvic mesh products when he worked as a plaintiff's expert in MDL No. 2187: *In re C.R. Bard, Inc. Pelvic Repair Products Liability Litigation.* Indeed, at his deposition, Dr. El-Ghannam disclaimed any reliance on this body of work in arriving at his opinions in this case. El-Ghannam Dep. at 35:5- 15. His

4

> late supplemental reports are now replete with data, analysis, and new opinions (e.g., molecular weight analyses) based on his work relating to Bard's polypropylene pelvic mesh products from MDL No. 2187. They also include analyses conducted during that time frame, including a previously undisclosed FTIR analysis of "medical grade" polypropylene. Feb. 6 Report at 9, 31, 46-47; 56-68; Feb. 10 Report at 11, 32, 47-50; 69-71; 135-148. As Dr. El-Ghannam admits, this work was performed years earlier, and was available for inclusion in his original report. Feb. 6 Report at pg. 8, FN 22.

(ECF No. 40 at 5-7.) Finally, Bard argues that invoices produced by Dr. El-Ghannam shows that he was working on a response to Dr. Reitman's report between January 13 and January 19, well before his January 27 deposition where he testified he had not yet prepared a response to Dr. Reitman and well before his rebuttal report was actually served on February 10. (*Id.* at 7.)

Plaintiff opposes Bard's motion, arguing that Dr. El-Ghannam's supplemental report and reliance list was timely, did not contain any new opinions not previously disclosed, and that Bard will have ample opportunity to cross-examine Dr. El-Ghannam on the supplemental report at trial. Plaintiff also contends that the rebuttal report is timely under Rule 26. However, Plaintiff also states that "any information that was unintentionally omitted from Dr. El-Ghannam's original report and reliance list that was subsequently disclosed in his supplemental disclosures was the result of a harmless error and is therefore admissible." (Pl's Opp. to Mot. to Strike, ECF No. 56 at 6.) Plaintiff is agreeable to having Bard submit supplemental *Daubert* briefing as well as supplemental expert reports based on Dr. El-Ghannam's supplemental reports, and to have Dr. El-Ghannam sit for a second deposition.

## II.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony, requiring parties to disclose the identity of any witness it may use a trial to present evidence under Federal Rule of Evidence 702, 703, or 705. *See* Fed. R. Civ. P. 26(a)(2)(A). That disclosure must be accompanied by a written report that contains, among other things, "a

5

complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). The parties must make their expert disclosures "at the times and in the sequence that the court orders" and supplement "when required under Rule 26(e)." Fed. R. Civ. P. 26(a)(2)(D)-(E). Rule 26(a) also provides that, "[a]bsent a stipulation or court order," expert reports intended "solely to contradict or rebuttal evidence on the same subject matter identified by another party" are due within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Rule 26(e) requires parties to supplement or correct its disclosures:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

Fed. R. Civ. P. 26(e)(1)(A). With respect to expert witnesses, a party's duty to supplement "extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due," Fed. R. Civ. P. 26(e)(2), which is 30 days before trial unless otherwise ordered. Fed. R. Civ. P. 26(a)(3)(B).

If a party fails to provide information as required by Rule 26(a) or (e), they may not use that information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court may also impose other sanctions. *Id.*

### III.

The Sixth Circuit has held that district courts have broad discretion over whether to exclude untimely disclosed expert testimony. *See Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000); *see also Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749, 752 (6th Cir. 2003) ("Rule 16 grants district courts broad discretion to enforce their scheduling orders."). This

6

Court has interpreted the supplementation permitted by Rule 26 as "limited to 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Winter Enterprises, LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019) (quoting *Antioch Co. Litig. Tr. v. McDermott Will & Emery, LLP*, No. 3:09-CV-218, 2016 WL 8257680, at *2 (S.D. Ohio July 15, 2016)).

"Pursuant to Rule 26(e)(2), a party may serve a supplemental expert report correcting information given by a retained expert during a deposition if the party learns that the information is incorrect in any material respect." *Jermano v. Graco Children's Prod., Inc.*, 2015 WL 1737548, at *4 (E.D. Mich. Apr. 16, 2015) (citing *See, e.g., SD3, LLC v. Rea*, 2014 WL 5319773 (D.D.C. 2014) (recognizing that Rule 26(e)(2) permits party to serve supplemental report to correct inaccuracies in deposition testimony); *Aguirre v. Mitsubishi Motors North America*, 2012 WL 4506009, at *7 (M.D. Tenn. Sept. 28, 2012) ("Under [Rule 26(e)(2)] an expert may supplement or correct his opinions after issuing his report and being deposed"); *Hamilton v. Berg*, 2010 WL 2889089, at *3 (S.D. Ohio. July 20, 2010 (same)).

1. **February 6 Supplemental Report**

The Court will first address Dr. El-Ghannam's February 6, 2020 supplemental report and reliance list. (*See* ECF Nos. 40-1 to 40-4.) Bard argues that this 115-page report is "chock full of new opinions and data," and that the "information included in Dr. El-Ghannam's supplemental reports—including literature to support his DRIFTS-FTIR analysis, his FTIR analysis of 'medical grade' polypropylene, and data, analysis, and opinions based on his work relating to Bard's polypropylene pelvic mesh products—was without question available prior to the service of his original report." (ECF No. 40 at 3-4.)

7

Plaintiff does not contend that this information was unavailable before Dr. El-Ghannam's original expert report was due, nor does he contend that the supplemental report corrects an "inaccuracy" in Dr. El-Ghannam's original report or in his deposition testimony. Instead, Plaintiff states:

> Plaintiff served Dr. El-Ghannam's supplemental report and reliance list which was an extension of his original expert report and did not contain any new opinions. Many of the sources, such as textbooks and scientific literature, that were referenced in Dr. El-Ghannam's supplemental report, were also included in his original report or on his original reliance list. Any new literature or data that was referenced in the supplemental report, that may have been inadvertently left out of his original report, simply provided additional support for the same expert opinions he proffered in the original report—it did not alter those opinions in any way.

(ECF No. 56 at 2.) Plaintiff thus contends that Dr. El-Ghannam's supplemental report did not include any new opinions, and that any new information that was inadvertently omitted from his original "simply provided additional support" for his already disclosed opinions.

"Supplementation of an expert report is allowed 'to correct inadvertent errors or omissions.'" *Rush v. City of Mansfield*, 2009 WL 454347, at *5 (N.D. Ohio Feb. 24, 2009) (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630 (E.D.N.C. 2008)). But supplementation "'does not cover failures of omission because the expert did an inadequate or incomplete preparation.'" *Id.* (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). "Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report." *Gallagher*, 568 F.Supp.2d at 631 (collecting cases).

Bard contends that the "failure to include opinions based on literature and data that was

8

available prior to service of the original report is purposeful and inexcusable." (ECF No. 40 at 8.) Bard argues that Plaintiff served Dr. El-Ghannam's supplemental report after Bard had already moved to exclude Dr. El-Ghannam's opinions, based in part on the lack of support for his opinions. (*Id.* at 11.) According to Bard, Dr. El-Ghannam's 115-page supplemental report contains new opinions and is an attempt to support Dr. El-Ghannam's opinions in contravention of this Court's scheduling orders and the purpose of *Daubert*. (*Id.*) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000) ("'District courts have broad discretion to exclude untimely disclosed expert-witness testimony,' particularly when these reports serve as a 'transparent attempt to reopen' the *Daubert* inquiry after the weaknesses in the expert's prior testimony have been revealed.")).

This Court agrees. Dr. El-Ghannam's February 6, 2020 supplemental report does much more than "correct inadvertent errors or omissions," and cannot be said to be the type of supplement contemplated by Rule 26. Instead, the 115-page report appears to be an attempt to bolster Dr. El-Ghannam's opinions in this case after he was cross-examined at deposition and after Bard moved to exclude his opinions under *Daubert*. The report contains detailed discussions of topics included in his original report based on data and literature that could have been included in his original report but were not.

Bard persuasively points to several examples in the report where it claims "Plaintiff ginned up Dr. El-Ghannam's supplemental reports in an effort to cure his woefully deficient testimony, respond to criticisms of his methodology, and to provide new and additional opinions to buttress his claims." (*Id.* at 6.) For example, Bard argues that Dr. El-Ghannam was unable to recall at his deposition any published literature that "used DRFITS-FTIR to analyze polypropylene synthetic mesh for possible oxidative degradation," but that pages 1-10 of the

9

February 6 supplemental report include "an extensive discussion of DRFITS-FTIR" with multiple cites to supporting literature. (*Id.* at 6.) Bard contends that none of this literature was cited in Dr. El-Ghannam's original report. Bard also claims Dr. El-Ghannam was unable to identify specifics regarding two other topics (amide bands and FTIR, and antioxidants) but that Dr. El-Ghannam's report now includes discussions of those topics. (*Id.*). Bard also contends that Dr. El-Ghannam's original report did not include any reference to or reliance on prior work, and that at deposition he specifically disclaimed any reliance on that prior work, but that "his late supplemental reports are now replete with data, analysis, and new opinions (e.g., molecular weight analyses) based on his work relating to Bard's polypropylene pelvic mesh products from MDL No. 2187." (*Id.* at 7.) The Court therefore finds that Dr. El-Ghannam's February 6 supplemental report is not a proper supplementation under Rule 26.

While Plaintiff argues that Dr. El-Ghannam's supplemental report did not include any new opinions or information, he also states that "any information that was unintentionally omitted from Dr. El-Ghannam's original report and reliance list that was subsequently disclosed in his supplemental disclosures was the result of harmless error and is therefore admissible." (ECF No. 56 at 6.)

Plaintiff is correct that even if Dr. El-Ghannam's supplemental report was not proper under Rule 26, that information may still be used at trial if Plaintiff shows the omission was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Advisory Committee's note to Rule 37(c)(1) "strongly suggests that 'harmless' involves an honest mistake on the party of a party coupled with sufficient knowledge on the part of the other party." *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (internal citations omitted). The Sixth Circuit has adopted the

following five factors to consider in assessing whether an omitted or late disclosure is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (citing *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). Bard contends that it is Plaintiff's burden to show the omission of this information in Dr. El-Ghannam's original report was substantially justified or harmless, and that Plaintiff cannot meet his burden. (ECF No. 40 at 9-10.)

Plaintiff offers the following explanation:

> To this end, any omissions in Dr. El-Ghannam's original report were not nefarious nor were they designed to sandbag or deceive Defendants. If anything was omitted from the original report, those omissions were harmless and completely unintentional. Also, Dr. El-Ghannam's mesh testing was delayed due to issues with obtaining pristine and explanted mesh products. As the result of these delays, the written report reflecting the testing was composed quickly to meet the Court's deadlines, and it is possible that because the expert report was put together quickly to reflect all the tests performed, some of the references that merely confirmed Dr. El-Ghannam's opinions, may have been inadvertently left out of the original report. Any such omissions were unintentional human errors which were promptly addressed and rectified in the supplemental report that was served on Defendants on February 7, 2020.

(ECF No. 56 at 4-5.) Plaintiff reiterates that none of the information in the supplemental report changed his previously disclose opinions or presented new opinions. (*Id.* at 5.)

This Court cannot agree that Plaintiff's omissions were substantially justified or harmless. While Plaintiff attempts to explain that any omissions were unintentional or inadvertent, the supplemental report totals 115 pages and contains detailed discussions of topics on which Dr. El-Ghannam was cross-examined and on which Bard has moved to exclude his opinions. And the surprise to Bard is significant. Bard relied on Dr. El-Ghannam's original

11

report in asking its own expert to respond to Dr. El-Ghannam, to depose Dr. El-Ghannam, and to move to exclude Dr. El-Ghannam's opinions. While trial is still more than two months away, Bard should not be required to spend the time and resources responding to a 115-page supplemental report that, according to Plaintiff, "did not contain any new opinions," "simply provided additional support for the same expert opinions he proffered in the original report," and "did not alter those opinions in anyway." (ECF No. 56 at 2.) Additionally, the supplemental report contains some information and data related to Dr. El-Ghannam work in a previous MDL on which he did not rely here, but included because he was asked about it at his deposition. (ECF No. 56 at 10.)[1] Information that Dr. El-Ghannam did not rely upon in forming his opinion or that "simply provides additional support" that was not significant enough to be included in his original report does not seem to have great importance to the issues in this case.

However, the Court will permit Dr. El-Ghannam to submit the underlying DSC data from the Polymer Center of Excellence and materials relating to the "medical grade" polypropylene, which appears to be pages 71 to 111 of the February 6 report. (ECF Nos. 40-2 to 40-4, PAGEID#2102 to PAGEID#2144.) Dr. El-Ghannam's original report contained his opinions

---

[1] Plaintiff also contends that at his deposition, "Dr. El-Ghannam was repeatedly questioned and asked to recite from memory all of the literature that formed the basis of his expert opinions" and that "[a]fter Dr. El-Ghannam was deposed, based on the questions he was asked, he supplemented his original report with additional literature and data he reviewed that further supported his expert opinions; of importance, this additional literature and data did not change any of his opinions." (ECF No. 56 at 3.) While Rule 26(e)(2) requires a party to supplement information given in a deposition, that supplementation is limited "to correcting information given by a retained expert during a deposition if the party learns that the information is incorrect in any material respect." *Jermano*, 2015 WL 1737548 at *4. "Rule 26(e)(2) places limits on supplementation by an expert, and supplementation may not be used for strategic advantage. For instance, a party may not use the supplementation process to introduce entirely new expert opinions that could have been provided prior to the expert's report and deposition..." *Id.* (citing *Gallagher*, 568 F.Supp.3d at 630-31 (citing cases)). Dr. El-Ghannam's supplemental report does not just correct an inaccuracy in his deposition testimony. It includes substantive discussions of information that was available before his original report was due and that could have been included in that report or at his deposition.

12

regarding the underlying DSC data and medical grade polypropylene, and Bard repeatedly requested that information be provided. (ECF No. 56 at 8-9.) According to Bard:

> After reviewing Dr. El-Ghannam's original expert report, it was clear that he had failed to produce underlying data from the independent laboratory that performed the differential scanning calorimetry ("DSC") testing on pristine and explanted mesh. He also failed to provide any information regarding the so-called "medical grade" polypropylene he analyzed in his report. On January 14, 2020, and January 17, 2020, Bard requested this information. *See* Exhibit 3 January 14 and January 17 email exchange between counsel. Plaintiff failed to produce this material.
>
> Dr. El-Ghannam was deposed for a full seven hours on January 27, 2020. Dr. El-Ghannam was questioned extensively about the basis for his various opinions and was repeatedly unable to provide literature or other information to support many of his opinions. Bard also renewed its request for the underlying DSC data and materials relating to the "medical grade" polypropylene at Dr. El-Ghannam's deposition. *See* Exhibit 4, Jan. 27, 2020, Deposition of Dr. Ahmed El-Ghannam ("El-Ghannam Dep.") at 18:18-19:25. Despite Bard's prior requests, Dr. El-Ghannam failed to provide any of these materials at the deposition.

(ECF No. 40 at 5-6.) Bard contends that following Dr. El-Ghannam's deposition, it renewed its request that that Dr. El-Ghannam produce the DSC data and materials relating to the medical grade polypropylene, and that the first time it was provided with the underlying data it had been requesting was in the February 6 supplemental report. (*Id.* at 8.) The Court will not strike information Bard repeatedly requested and that Dr. El-Ghannam provided.

### 2. February 10 Rebuttal Report

Bard also seeks to exclude Dr. El-Ghannam's February 10, 2020 rebuttal report and reliance list. (ECF No. 40-5.)[2] Bard contends "the schedule agreed upon by the parties and ordered by this Court is silent on the ability to submit a rebuttal report. If Plaintiff desired an ability to do so, the time to raise that issue has passed." (ECF No. 40 at 3-4.) Plaintiff contends

---

[2] Though the parties refer to Dr. El-Ghannam's February 10, 2020 rebuttal report as containing a reliance list, the only supplemental reliance list in the record appears following the February 6, 2020 report at pages 112-115. (*See* ECF No. 40-4 at PAGEID#2145-2148.) But because that supplemental reliance list appears to also support the rebuttal report, the Court will not strike it for the reasons that follow.

13

that Dr. El-Ghannam's rebuttal report is permitted under Rule 26(a)(2)(D)(ii). That rule states:

> (D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
>
>> (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Plaintiff states that Dr. El-Ghannam's rebuttal report rebuts the opinion of Bard's materials expert Dr. Maureen Reitman, and that it was served 30 days after Bard served Dr. Reitman's report. Bard counts that the rule "provides for rebuttal reports only absent a court order" and that because the Court's CMO did not provide for rebuttal reports, none were permitted. (ECF No. 67 at 4.)

The Court disagrees with Bard's reading of Rule 26. The rule requires expert disclosures to be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Here, CMO 20-A included deadlines for Plaintiff's expert reports and Defendant's expert reports, but was silent as to rebuttal reports. "A party is required to follow the Court's established deadlines for disclosure, or, if none, the default deadlines established in Rule 26." *Ohio A. Philip Randolph Institute v. Smith*, 2019 WL 428371, at *2 (S.D. Ohio Feb. 4, 2019) (citing Fed. R. Civ. P. 26(a)(2)(D)). "It appears that courts in this Circuit have uniformly concluded that when, as here, a scheduling order does not address rebuttal reports, Rule 26(a)(2)(D)'s 30-day rule applies." *Lincoln Elec. Co. v. Travelers Cas. & Sur. Co.*, 2013 WL 12131876, at *1 (N.D. Ohio June 26, 2013) (citing *LL NJ, Inc. v. NBC*, 2007 WL 1583222 (E.D. Mich. May 31, 2007)).

Because CMO 20-A did not establish a deadline for rebuttal reports, the "default deadline" of 30 days from Rule 26(a)(2)(D)(ii) is applicable: "absent a stipulation or a court order, the disclosures must be made…within 30 days after the other party's disclosure." Plaintiff

bears the burden of proof at trial, and permitting Dr. El-Ghannam's rebuttal report is consistent with that burden and with Rule 26. However, because Bard has not had an opportunity to cross-examine Dr. El-Ghannam regarding his rebuttal report, the Court will permit Bard to, as soon as practicable, conduct a second deposition of Dr. El-Ghannam regarding the February 10, 2020 rebuttal report and to submit additional *Daubert* briefing based on that report and testimony.

### IV.

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Bard's Motion to Strike (ECF No. 40.) Specifically, the Motion is **GRANTED** with respect to Bard's request to strike Dr. El-Ghannam's February 6, 2020 supplemental expert report, except with respect to the DSC data and medical grade polypropylene materials (pages 71 to 111) and reliance list (pages 112 to 115). The Motion is **DENIED** with respect to Dr. El-Ghannam's February 10, 2020 rebuttal report and reliance list. Bard is permitted, however, to take a second deposition of Dr. El-Ghannam regarding that rebuttal report and to submit additional *Daubert* briefing based on that report and testimony as soon as practicable.

**IT IS SO ORDERED.**

3-9-2020
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

3/9/2020
DATE

KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE