**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: DAVOL, INC./C.R. BARD,**
**INC., POLYPROPYLENE HERNIA**
**MESH PRODUCTS LIABILITY**
**LITIGATION**

**Case No.:  2:18-md-2846**


**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Kimberly A. Jolson**


**This document relates to:**
**ALL CASES**


**DEFENDANTS C. R. BARD, INC. AND DAVOL INC.'S MOTION FOR**
**A DOCKET CONTROL ORDER**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 3

    A.  A Docket Control Order Requiring Proof Of Compensable Injury Would Be Appropriate And Useful In Culling Meritless Claims ........................................................ 3

    B.  A Docket Control Order Requiring Counsel Certifications As To Basic Requirements Would Be Appropriate And Useful In Advancing The MDL's Purpose ............................................................................................................................ 10

    C.  Docket Control Orders Do Not Require Prior Settlement ................................................ 16

    D.  This MDL Is Ripe For A *Lone Pine* Docket Control Order ............................................. 18

CONCLUSION .......................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
    MDL No. 2885, May 6, 2022 ............................................................................6, 19

*Acuna v. Brown & Root, Inc.*,
    200 F.3d 335 (5th Cir. 2000) ...................................................................................19

*Albright v. Upjohn Co.*,
    788 F.2d 1217 (6th Cir. 1986) ................................................................................12

*Augustine v. Adams*,
    88 F. Supp. 2d 1166 (D. Kan. 2000)..................................................................13, 14

*In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*,
    687 F. Appx. 210 (3d Cir. Apr. 19, 2017) ...............................................................3

*In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*,
    MDL No. 1871, 2010 WL 4720335 (E.D. Pa. Nov. 15, 2010)...............................18

*Baker v. Chevron USA, Inc.*,
    Case No. 1:05-CV-227, 2007 U.S. Dist. LEXIS 6601 (S.D. Ohio Jan. 30,
    2007) ....................................................................................................................9, 18

*Burns v. Universal Crop. Protection Alliance*,
    NO: 4:07CV00535 SWW, 2007 U.S. Dist. LEXIS 71716 (E.D. Ark. Sept. 25,
    2007) ........................................................................................................................12

*In re Cook Med., Inc., IVC Filters Mkt'g, Sales Pract. & Prod. Liab. Litig.*,
    MDL No. 2570, Mar. 29, 2022 ...............................................................................12

*In re Cook Med., Inc., IVC Filters Mkt'g, Sales Pract. & Prod. Liab. Litig.*,
    MDL No. 2570, Oct. 26, 2020.............................................................................12, 15

*In re Cook Medical, Inc. Pelvic Repair Sys. Prof. Liab. Litig.*,
    2018 WL 4698953 (S.D. W. Va. Sept. 28, 2018)....................................................5

*Doggett v. Perez*,
    225 F.R.D. 255 (E.D. Wash. 2004)........................................................................13

*In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*,
    Civil Action No. 1:17-MD-02782-RWS, Practice and Procedure Order No.
    26, ECF No. 743 (N.D. Ga. May 13, 2021)........................................................6, 19

*In re Fosamax Prods. Liab. Litig.*,
    No. 06 MD 1789 (JFK), 2012 U.S. Dist. LEXIS 166734 (S.D.N.Y. Nov. 20,
    2012) .......................................................................................................................... *passim*

*Freeman v. Wyeth*,
    764 F.3d 806 (8th Cir. 2014) ................................................................................5

*Hamer v. Livanova Deutschland GmbH*,
    994 F.3d 173 (3d Cir. 2021)..................................................................................9

*In re Physiomesh Mesh Litig.*, Master Case No. ATL-L-2122-18, Case
    Management Order No. 20 (N.J. Sup. Ct. L. Div. Atlantic Cty. May 13, 2021).....................6

*Johns v. C. R. Bard, Inc., et al.*,
    Case No. 2:18-cv-01509-EAS-KAJ, Trial Tr., Aug. 16, 2021 ..................................7

*Johnson v. A. W. Chesterton Co.*,
    18 F.3d 1362 (7th Cir. 1994) ...............................................................................13

*Jones v. Continental Corp.*,
    789 F.2d 1225 (6th Cir. 1986) .............................................................................15

*Lore v. Lone Pine Corp.*,
    No. L-, 33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Jan. 1, 1986).........................3

*McManaway v. KBR, Inc.*,
    265 F.R.D. 384 (S.D. Ind. 2009)........................................................................4, 9

*Montgomery v. Wyeth*,
    580 F.3d 455 (6th Cir. 2009) ...............................................................................13

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ...............................................................................5

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*,
    465 F.3d 642 (6th Cir. 2006) ...............................................................................16

*In re Ruben*,
    825 F.2d 977 (6th Cir. 1987) ...................................................................14, 15, 16

*Stewart v. The Proctor & Gamble Co.*,
    Case No. C-1-06-374, 2006 U.S. Dist. LEXIS 102384 (S.D. Ohio July 21,
    2006) ...................................................................................................................14

*In re Testosterone Replacement Therapy ("TRT") Products Liability Litigation*,
    MDL No. 2545, Master Docket Case No. 1:14-cv-01748, 2018 U.S. Dist.
    LEXIS 205125 (N.D. Ill. June 11, 2018)...............................................4, 16, 17, 19

*Trujillo v. Ametek, Inc.*,
    Case No. 3:15-cv-1394-GPC-BGS, 2016 U.S. Dist. LEXIS 84834 (S.D. Cal.
    June 28, 2016)...................................................................................................19

*In re Vioxx Prods. Liab. Litig.*,
    2:05-md-01657-EEF-DEK, ECF No. 12626 (E.D. La. Oct. 11, 2007) ...................17

*In re Vioxx Prods. Liab. Litig.*,
    MDL NO. 1657, 557 F. Supp. 2d 741 (E.D. La. 2008) ...........................5, 17, 18, 19

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
    MDL No. 2592, 2:19-cv-14669, 2021 U.S. Dist. LEXIS 25296 (E.D. La. Feb.
    10, 2021) ....................................................................................................3, 4, 16, 19

*In re Zimmer Nexgen Knee Implant Products Liability Litigation*,
    MDL NO. 2272, Master Docket Case No. 1:11-cv-05468, 2016 WL 3281032
    (N.D. Ill. June 10, 2016) ........................................................................................5

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
    MDL No. 2848, No. 18-md-2848, 2022 U.S. Dist. LEXIS 57935 (E.D. Pa.
    Mar. 30, 2022)..................................................................................4, 9, 16, 19

**Statutes**

28 U.S.C. § 1927..........................................................................................................15

**Rules**

Fed. R. Civ. P. 1 ...........................................................................................................5

Fed. R.Civ. P. 16 ..........................................................................................................10

Fed. R. Civ. P. 16(c)(2)................................................................................................10

Fed. R. Civ. P. 16(c)(2)(A)..........................................................................................10

Fed. R. Civ. P. 16(c)(2)(B) ..........................................................................................10

Fed. R. Civ. P. 16(c)(2)(F)...........................................................................................10

Fed. R. Civ. P. 16(c)(2)(L)...........................................................................................10

Fed. R. Civ. P. 16(c)(2)(P)...........................................................................................10

Fed. R. Civ. P. 26(b) ....................................................................................................9

**Other Authorities**

Engstrom & Espeland, *Lone Pine Orders: a Critical Examination and Empirical Analysis*, 168 Penn. L. Rev. Online 91, 93 (2020)....................................................................4

https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-May-16-2022.pdf ............................................................................................7, 17

## **INTRODUCTION**

Defendants C. R. Bard, Inc., and Davol Inc. (collectively, "Bard") hereby move for a docket control order to address the significant portion of now-pending cases that appear on their face to involve no actionable injury or do not belong in this proceeding. After more than three-and-a-half years and two bellwether trials, the MDL has seen considerable progress. Despite the maturity of this litigation, Plaintiffs continue to file cases at a high rate, such that the total number of pending cases likely will far exceed the current total of more than 16,800. The newer cases are, on average, weaker than the body of cases that were pending in 2018 and early 2019 when CMOs were entered defining the scope of case-specific discovery. It is now apparent that there are a considerable number of pending cases with one or more of the following issues: 1) the plaintiff is suing over a Bard device that is still in-place; 2) the plaintiff is suing over an incidental finding discovered during an unrelated procedure; 3) the plaintiff is suing over an alleged injury that produced no physical symptoms; 4) the plaintiff is suing over a device not made by Bard or otherwise outside of the scope of this MDL; 5) the plaintiff's claims are plainly barred by applicable statutes of limitations and/or repose; 6) the plaintiff has multiple cases arising out of the same operative facts pending in this MDL; and 7) the plaintiff's claims have been resolved in other litigation or are subject to a prior dismissal with prejudice.

The continuously increasing percentages of such cases stand as impediments to this MDL fulfilling its function. The MDL now needs an efficient mechanism to root out the cases that have no merit, so that the litigation can focus on the remaining cases. If steps are not taken now to ensure that basic requirements are met for all pending cases, then the subsequent course of this MDL will likely be prolonged and more complicated.

Based on the current CMOs, it is too easy for a plaintiff to continue with their lawsuit in the MDL without legally cognizable claims, with time-barred or resolved claims, or with claims

that do not belong in this MDL. Such a plaintiff, assuming his/her case was not included in the bellwether trial process, could remain on the docket for years without having to do more than serve the filed short-form complaint ("SFC") and serve a Plaintiff Profile Form ("PPF"). *See* ECF Nos. 57, 61 & 109. Bard, meanwhile, has limited ability to identify cases that should be subject to dismissal and even less ability to pursue dismissal at this time. This is not conducive to the long-term prospects for the MDL and encourages the filing of cases with little or no vetting of the merits.

Bard seeks a docket control order requiring plaintiffs to confirm that plaintiffs have appropriate *bona fides* for inclusion in the MDL. A personal injury lawsuit requires proof of a legally cognizable injury. Before filing a case in this MDL, the lawyer signing the complaint should have already identified medical records and/or generated expert proof that the subject Bard device caused physical injury symptoms and/or limitations, and/or that a complication with the device led to surgical intervention. Providing fundamental proof of a legally cognizable injury should be a simple task at this stage, unless the case does not belong here because suit was filed without such an injury.

Similarly, before bringing a case in this MDL, each plaintiff's counsel should have already obtained medical records making it clear that the plaintiff was implanted with one of the twenty-four Bard polypropylene hernia devices at issue in this MDL. ECF No. 67. In addition, before filing any case, plaintiff's counsel should have assessed whether the claims asserted are time-barred, have been resolved, have been the subject of a prior court order, or have already been asserted in another pending case. Requiring plaintiff's counsel in each case here to confirm that assessments on these issues have been conducted, with the expectation of voluntary dismissal of extraneous cases and claims as appropriate and the possibility of cost-shifting in the event of later involuntary dismissals, does not impose a significant burden on plaintiffs or their counsel. It

would, however, advance the litigation considerably.  Implementing staggered deadlines for plaintiffs to take these simple steps for all pending cases and requiring them for all future cases would go a long way toward allowing this MDL to focus on cases that should be pending and will need to be litigated on their merits.

These are not burdensome or outlier requirements, but routine matters championed by many MDL judges (and commentators alike).  They level-set the litigation such that all parties can evaluate their positions and work with the Court with confidence to move the litigation forward, knowing that the docket is not loaded down with cases that have no injury, where the product is still in place, where the claims are plainly untimely, and/or do not involve one of the subject products for the MDL.  An increasing number of MDLs, particularly in MDLs concerning medical products and MDLs with a high number of pending cases, have imposed requirements on all pending cases to help the overall management of the litigation.  Such requirements have also been imposed in MDLs in the same general posture as this MDL, with considerable generic discovery completed, some bellwether trials completed, and enough information on the pending cases to understand the recurring distinctions and issues.  The time has come to impose such requirements here to aid in the administration of the large number of cases pending and still being filed.

## ARGUMENT

### A.    A Docket Control Order Requiring Proof Of Compensable Injury Would Be Appropriate And Useful In Culling Meritless Claims

Docket control orders, often referred to as *Lone Pine* orders based on *Lore v. Lone Pine Corp.*, No. L-, 33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Jan. 1, 1986), are "routine" and within the "wide latitude" afforded MDL courts in managing litigation.  *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 687 F. Appx. 210, 214 (3d Cir. Apr. 19, 2017); *see also In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2:19-cv-14669, 2021

U.S. Dist. LEXIS 25296, at *7-*8 (E.D. La. Feb. 10, 2021) ("*Lone Pine* orders have been routinely used by the courts to manage mass tort cases."). Indeed, one study found that federal and state trial courts issued at least 97 Lone Pine orders from 1986 to 2019. *See* Engstrom & Espeland, *Lone Pine Orders: a Critical Examination and Empirical Analysis*, 168 Penn. L. Rev. Online 91, 93 (2020), attached hereto as **Exhibit 1**. "Although no federal rule expressly authorizes the use of *Lone Pine* orders, federal courts have interpreted Rule 16 of the Federal Rules of Civil Procedure to give the authority to enter *Lone Pine* orders in complex litigation." *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2012 U.S. Dist. LEXIS 166734, at *5 (S.D.N.Y. Nov. 20, 2012) (citation omitted); *see also McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D. Ind. 2009) ("*Lone Pine* orders are permitted by Rule [16]. . . which provides that a court may take several actions during a pretrial conference, including 'adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.'") (citations omitted).

The particular utility of docket control orders in MDL proceedings like this has been recognized: "A district court, administrating a multidistrict case, faces unique challenges not present when administrating cases on a routine docket." *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, MDL No. 2848, No. 18-md-2848, 2022 U.S. Dist. LEXIS 57935, at *5 (E.D. Pa. Mar. 30, 2022). *Lone Pine* orders are essential tools in helping MDL courts weed out nonmeritorious claims and may "require plaintiffs to furnish specific evidence like proof of a medical diagnosis." *Id.* (quotations and citation omitted); *see, e.g.*, *In re Xarelto*, 2021 U.S. Dist. LEXIS 25296, at *8-*9 (noting that plaintiffs transferred into MDL were required to produce a Rule 26(a)(2)-compliant expert report on medical causation); *In re Testosterone Replacement Therapy ("TRT") Products Liability Litigation*, MDL No. 2545, Master Docket Case No. 1:14-

cv-01748, 2018 U.S. Dist. LEXIS 205125, at *421-*425 (N.D. Ill. June 11, 2018) (requiring each remaining and new plaintiff to produce all medical and pharmacy records, and an expert report within 90 days); *In re Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL NO. 2272, Master Docket Case No. 1:11-cv-05468, 2016 WL 3281032, at*1-*2 (N.D. Ill. June 10, 2016) (entering *Lone Pine* order requiring each plaintiff in bellwether trial track in medical device MDL to identify particular injury claims and provide a signed expert declaration regarding causation in the form attached to the order); *In re Vioxx Prods. Liab. Litig.*, MDL NO. 1657, 557 F. Supp. 2d 741, 742-43, 744-45 (E.D. La. 2008) (denying motion to suspend *Lone Pine* order requiring plaintiffs to produce expert report confirming injury and "showing . . . some kind of scientific basis that Vioxx could cause the alleged injury").

As the judge overseeing the largest current MDL proceeding noted recently in connection with the dismissal of more than 20,000 plaintiffs for failure to submit a specific form or report by the deadline established in a docket control order:

> An MDL judge bears the "enormous" task of "mov[ing] thousands of cases toward resolution on the merits while at the same time respecting their individuality." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006). To carry out this task in an organized and efficient manner, an MDL court must define and strictly adhere to case management rules. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). Pretrial orders—and the parties' compliance with those orders and their deadlines— "are the engine that drives disposition on the merits." *Id.* at 1232. "A [court's] willingness to resort to sanctions in the event of noncompliance can ensure that that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation." *In re Cook Medical, Inc. Pelvic Repair Sys. Prof. Liab. Litig.*, 2018 WL 4698953, at *2 (S.D. W. Va. Sept. 28, 2018) (citing *Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.")).

Order, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 2885, May 6, 2022 (ECF No. 3076), attached hereto as **Exhibit 2**.

The time has come for this Court to enter a docket control order to help ensure that unsupported cases can be weeded out in an efficient manner. The first part of Bard's proposal would require plaintiffs to produce proof of a medical diagnosis of compensable injury in order to proceed.[1] *See* Proposed Case Management Order, *attached* hereto as **Exhibit 3**. Acceptable proof could include an affidavit from a qualified, licensed surgeon attesting that he or she opines to a reasonable degree of medical certainty that a causal connection exists between the plaintiff's alleged symptomatic injuries and the Bard hernia device in question. This is fundamental information, which plaintiffs would otherwise be required to produce at a much later stage. Such proof would help to identify the plaintiffs who fit into one or more of three categories set out above: 1) the plaintiff is suing over a Bard device that is still in-place; 2) the plaintiff is suing over an incidental finding discovered during an unrelated procedure; and 3) that plaintiff is suing over an alleged injury that produced no physical symptoms. Such cases have no place here.

As the Court may recall, at the beginning of the MDL, plaintiffs' leadership stated that they "anticipate[d] that a large marjority [of the cases in the MDL] will be a revision or surgical intervention as a result of being injured; however, there are instances where the device cannot be safely removed and, in that instance, there would not be." CMC Tr., Sept. 5, 2018, ECF No. 13, at 42:8-11. Or, as paraphrased by the Court, "it's either explanted or [there is] a reason that it can't

---

[1] The first part of the Proposed Case Management Order is modeled on the stipulated *Lone Pine* orders entered in the Physiomesh MDL and state court coordinated proceedings as models, both of which require plaintiffs to serve case-specific expert reports concerning the specific causation of the plaintiffs' alleged injuries. *See, e.g.*, *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, Civil Action No. 1:17-MD-02782-RWS, Practice and Procedure Order No. 26, ECF No. 743 (N.D. Ga. May 13, 2021), attached as **Exhibit 4**; *In re Physiomesh Mesh Litig.*, Master Case No. ATL-L-2122-18, Case Management Order No. 20 (N.J. Sup. Ct. L. Div. Atlantic Cty. May 13, 2021), attached as **Exhibit 5**.

be explanted." *Id*. at 42:12-13.  More than three-and-a-half years later, the number of total cases in the MDL has swelled to more than 16,800, third-most among active MDLs.[2]  Without medical records on all pending cases, an exact count is impossible, but it appears that a significant percentage of the pending cases are cases where the only device at issue is still implanted, that is "product-in-place" cases ("PIP").

It also appears that the percentage of PIP cases has increased over time as more law firms have filed cases.  In fact, in a sampling of 300 of the 709 new cases filed between September 1, 2021, and March 8, 2022, for which Bard has received Plaintiff Profile Forms, at least 34% appear to be cases in which the device at issue remains in place with or without any post-implant surgical intervention.  The number of PIP cases and the trend of an increasing percentage of PIP cases over time limit the ability of the parties to evaluate the remaining inventory of filed and unfiled cases, despite the clear information provided from verdicts in two bellwether trials on the two most prevalent devices at issue in cases in this MDL.  Requiring proof from an apparent PIP case of a medical diagnosis of compensable injury will be an effective way to determine which cases do not merit further time or effort from the parties or Court.

The same need exists as to the many pending plaintiffs who have had their Bard hernia mesh device removed, but for reasons that had nothing to do with any injury or symptoms allegedly caused by the device.  As the *Johns* trial and full defense verdict showed, those cases are of negligible value and highly questionable merit in terms of any legally cognizable injury.  In *Johns*, the claimed injury of asymptomatic omental adhesions was discovered as an incidental finding during a second surgery for a recurrent diastasis recti (not a hernia) and the Ventralight ST was removed to facilitate the repair (rather than because of the adhesions).  *See Johns v. C. R. Bard,*

---

[2]  https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-May-16-2022.pdf.

*Inc., et al.*, Case No. 2:18-cv-01509-EAS-KAJ, Trial Tr., Aug. 16, 2021, ECF No. 565, at 143:1-13 (explanting surgeon testifying that he did not attribute plaintiff's pain at the time of his second surgery to his adhesions and that he did not even discover them until he operated) & 145:2-10 (confirming that the pain plaintiff experienced was from his recurrent diastasis).

The point here is not to relitigate *Johns*, but to draw attention to the fact that there are "explant" cases where it should be evident from the records that the removal was only incidental, and thus more akin to a PIP case than a case in which the plaintiff underwent a removal surgery specifically because of a doctor-perceived complication connected to a Bard hernia mesh device. Requiring plaintiffs to produce documents they should already have or can easily obtain will allow for the differentiation between cases where there may be a compensable injury and those where, despite an explant procedure, there is no compensable injury.

Similarly, for plaintiffs who have had no post-implant surgical intervention, it may be important to distinguish between those suing without any evidence of physical symptoms or limits (e.g., claiming only emotional distress or the risk of future injury) and those who may have compensable injuries despite not having had surgical intervention. The latter category may match with the stated expectation from plaintiffs' leadership *supra* that "there are instances where the device cannot be safely removed." CMC Tr., Sept. 5, 2018, ECF No. 13, at 42:8-11. A plaintiff with a medical diagnosis of a compensable physical injury that his or her physicians have determined cannot be addressed through a safe surgical intervention should have proof on these issues available to produce. Likewise, any plaintiff who claims to have a compensable injury—implicit in bringing a product liability suit in the first place—should also be prepared to provide proof of a medical diagnosis of a compensable physical injury.

These requirements for current and future cases would further "[t]he basic purpose of a *Lone Pine* order [] to identify and cull potentially meritless claims." *Baker v. Chevron USA, Inc.*, Case No. 1:05-CV-227, 2007 U.S. Dist. LEXIS 6601, at *2 (S.D. Ohio Jan. 30, 2007). This identification and culling would help to "boost efficiency" for the MDL by "ensur[ing] that only plaintiffs with meritorious cases are compensated" in the event of a settlement or "ensur[ing] that the home districts receive only viable cases" in the event of remand. *See In re Fosamax*, 2012 U.S. Dist. LEXIS 166734, at *7; *see also In re Zostavax*, 2022 U.S. Dist. LEXIS 57935, at *7 ("It is now time for plaintiffs to come forward with the Laboratory Reports or other documentation Merck requests to enable the court to weed out non-meritorious claims and move along these 1,700 or more cases toward a final resolution."); *McManaway*, 265 F.R.D. at 388-89 ("[I]n order to promote efficiency in the resolution of the case, an order on Plaintiffs' Fed. R. Civ. P. 26(b) expert disclosures should issue directing Plaintiffs to provide expert disclosures in the three areas of inquiry defendants requested (exposure, injury, and causation)."). As the MDL court in the *In re Zostavax* litigation stated recently:

> While a district court must be careful not to stifle meritorious claims, it may impose a *Lone Pine* order so as to "require plaintiffs to furnish specific evidence like proof of a medical diagnosis, with the goal of winnowing non-compliant cases from the MDL."

*In re Zostavax*, 2022 U.S. Dist. LEXIS 57935, at *5 (quoting *Hamer v. Livanova Deutschland GmbH,* 994 F.3d 173, 178 (3d Cir. 2021)). Providing the parties and the Court with an effective method to cull out the claims of uninjured plaintiffs will advance the needs of the MDL and potentially discourage future plaintiffs from bringing unsupported cases.

**B.      A Docket Control Order Requiring Counsel Certifications As To Basic Requirements Would Be Appropriate And Useful In Advancing The MDL's Purpose**

In addition to seeking production of proof of medical diagnosis of compensable injury, Bard seeks production and certification from plaintiff's counsel as to four other basic issues, discussed *supra*, each of which should have been considered before bringing suit in this MDL. *See* Proposed Case Management Order, **Exhibit 3**.  Unfortunately, based on information that Bard has at this time, there are a relatively large number of cases that should be dismissed or transferred because of one or more of the following reasons:  1) the plaintiff is suing over a device not made by Bard or otherwise outside of the scope of this MDL; 2) the plaintiff's claims are plainly barred by applicable statutes of limitations and/or repose; 3) the plaintiff has multiple cases that arise from the same operative facts pending in this MDL; and 4) the plaintiff's claims have been resolved in other litigation or are subject to a prior dismissal with prejudice.  By entering a docket control order requiring plaintiffs and their counsel to take certain basic steps, the parties and the Court will be in a better position to weed out cases than if Bard had to file individual motions after the completion of costly case-specific discovery.

This is well within the Court's authority under Fed. R. Civ. P. 16(c)(2), as well as its inherent authority described above.  That provision authorizes the Court to take action on, among other matters, "eliminating frivolous claims or defenses, "amending the pleadings," "controlling and scheduling discovery," "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems, and "facilitating in other ways the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c)(2)(A), (B), (F), (L) & (P); *see also* Fed. R. Civ. P. 16 adv. comm. note (1983) (referencing the "court's power to identify the litigable issues," the goal of "promoting efficiency and conserving judicial resources by identifying the real issues prior

- 10 -

to trial," and that "[t]here is no reason to require that [eliminating frivolous claims or defenses] this await a formal motion for summary judgment").  The provisions that Bard seeks here fall squarely within what the Court, particularly in its MDL function, has been authorized to do.

This MDL was established to address common issues in connection with product liability cases against Bard and Davol concerning one or more of their twenty-four polypropylene-based hernia mesh devices (hereinafter, "covered devices").  ECF Nos. 1 & 67.  While there may be cases with claims asserted as other Bard devices or devices of other manufacturers, those cases belong in this MDL <u>only</u> if claims are also being asserted against Bard as to a covered device.[3]  A case that does not assert claims against Bard as to a covered device should be dismissed or transferred depending on what other claims are asserted.  Even a case that purports to concern a covered device will be subject to dismissal if there is not basic proof that the plaintiff was in fact implanted with the device over which she or he is suing.  Requiring that all current and future plaintiffs produce records from the implanting surgeons or hospitals identifying the specific manufacturer and model of each hernia device implanted in the plaintiff will aid in culling out cases that do not belong in this MDL.[4]  An attendant requirement that plaintiff's counsel assess the claims asserted, the defendants, and available product identification evidence to determine if a supported claim against Bard as to a covered product can be made would also be appropriate. Cases that do not belong in this MDL can transferred to another district court if claims concerning non-covered devices have been asserted or dismissed if not.

---

[3]  The JPML has assigned a number of multi-manufacturer cases to this MDL even when another MDL exists concerning the other manufacturer's device at issue.  This has been the case regardless of which party tags the case first.

[4]  The PPF currently required after filing a case does not have this specific requirement, as it asks each plaintiff to produce the medical records he or she has obtained related to the asserted claims.  ECF No. 57.

Requirements that plaintiffs produce proof of product identification, purchase, or exposure (as in environmental torts) are some of the most common provisions in *Lone Pine* orders, docket control orders, and case management orders in MDLs, coordinated proceedings, and multi-plaintiff cases. *Lone Pine* itself concerned proof of exposure. Numerous MDLs concerning over-the-counter products have required the early production of product identification information. *See, e.g.*, *Burns v. Universal Crop. Protection Alliance*, NO: 4:07CV00535 SWW, 2007 U.S. Dist. LEXIS 71716, at *7-*8, *10-*11 (E.D. Ark. Sept. 25, 2007) (entering *Lone Pine* order requiring plaintiffs to provides affidavits establishing product identification). The dismissal of non-compliant cases in the *3M Combat Arms* MDL discussed above began with the requirement that plaintiffs produce certain records relating to the timing of their military service, which served as a proxy for use of the product at issue. Requiring a counsel certification of consideration of basic issues concerning which defendants are being sued over which products is appropriate because it is something each counsel should have done before bringing suit. *See Albright v. Upjohn Co*., 788 F.2d 1217, 1219-21 (6th Cir. 1986) (reversing district court's denial of Rule 11 sanctions against plaintiff's attorney for "insufficient" pre-filing investigation that would have revealed a lack of evidence that defendant was not manufacturer of allegedly defective antibiotic taken by plaintiff). In *Cook IVC Filter* MDL, the judge has required similar attorney certifications on issues that should have been assessed before bringing suit. CMO No. 28, *In re Cook Med., Inc., IVC Filters Mkt'g, Sales Pract. & Prod. Liab. Litig*., MDL No. 2570, Oct. 26, 2020, *attached* hereto as **Exhibit 6**; CMO No. 30, *In re Cook Med., Inc., IVC Filters Mkt'g, Sales Pract. & Prod. Liab. Litig*., MDL No. 2570, Mar. 29, 2022, *attached* hereto as **Exhibit 7**.

The first of these *Cook IV Filter* orders required plaintiff's counsel to assess applicable statute of limitations and statutes of repose and voluntarily dismiss time-barred cases. *Cook* CMO

No. 28, **Exhibit 6**.  In it, the MDL judge specified that plaintiff's counsel's "reasonable screening inquiry requires, at a minimum, communicating with the plaintiff, reviewing the plaintiff's pleadings, and reviewing the plaintiff's [form discovery responses]."  *Id.* at 1-2.  While this Court has not yet issued any orders on statute of limitations or repose, these are issues that counsel should have assessed up front in every case.  *See Johnson v. A. W. Chesterton Co.*, 18 F.3d 1362, 1365 (7th Cir. 1994) (finding that sanctions were properly imposed on plaintiffs' attorney for failing to make reasonable pre-filing investigation that would have revealed claim was barred by statute of limitations); *Doggett v. Perez*, 225 F.R.D. 255, 257 (E.D. Wash. 2004) (imposing sanctions under Rule 11 where "John Doggett's claims were legally frivolous when filed because they were clearly time-barred"); *Augustine v. Adams*, 88 F. Supp. 2d 1166, 1173-74 (D. Kan. 2000) (sanctioning attorney under Rule 11 for filing complaint where he should have realized that plaintiff's claims were barred by res judicata, collateral estoppel, and state statute of limitations, because his position was not warranted by existing law or nonfrivolous argument).

      In this MDL, there are strong reasons to suspect that a substantial number of cases ultimately will be barred by statutes of limitations or repose.  For instance, the wave of legal advertising that preceded the MDL's creation and has continued since does not focus on a specific recall or other common triggering event that might affect a statute of limitations analysis.  Rather, it focuses on reoperation after implant, for any reason and at any time.  From the information available from SFCs and PPFs, at least two common patterns can be seen:  1) the implant at issue occurred ten to thirty-five years before the initiation of the suit, and 2) the suit was initiated four or more years after the disclosed explant surgery.  For the former pattern, statutes of repose in states like Tennessee should bar these case regardless of when claims accrued.  *See Montgomery v. Wyeth*, 580 F.3d 455 (6th Cir. 2009).  For the latter pattern, most states have statutes of

- 13 -

limitations applicable to product liability claims that are three years or shorter and claims typically will have accrued by no later than the first surgical intervention.  Together, these patterns make it clear that there will be a number of time-barred cases and plaintiffs' counsel should have assessed these issues before filing any case.

It is also clear from SFCs and PPFs that there are hundreds of cases pending where the plaintiff has more than one case in the MDL, where the plaintiff has previously resolved some or all of her or his claims against Bard, and/or where the case has been the subject of a prior order of dismissal.  Given existing orders, the process of identifying these cases and seeking dismissal, amendment, or consolidation, either voluntarily or by motion, is time-consuming and inefficient. Rather, the assessment of pending and prior cases by the same plaintiff, whether by talking to the plaintiff or searching dockets, is something that a plaintiff lawyer should have done before filing any case.  *See, e.g., In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987) ("Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney."); *Stewart v. The Proctor & Gamble Co.*, Case No. C-1-06-374, 2006 U.S. Dist. LEXIS 102384, at *3 (S.D. Ohio July 21, 2006) ("Plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."); *see also Augustine*, 88 F. Supp. 2d at 1173-74 (sanctioning attorney under Rule 11 for filing complaint where he should have realized that plaintiff's claims were barred by res judicata, collateral estoppel, and state statute of limitations, because his position was not warranted by existing law or nonfrivolous argument).

The Sixth Circuit's decision in *In re Ruben* addressed the duties of plaintiffs' counsel in filing cases and the authority of federal courts to discourage frivolous claims. In enunciating the standard for evaluating fee awards under 28 U.S.C. § 1927, the court stated:

> 28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for "unreasonable and vexatious" multiplication of litigation despite the absence of any conscious impropriety. An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to carte blanche to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious."

*In re Ruben*, 825 F.2d at 984 (quoting *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)).

As in the *Cook* orders, it is appropriate to require that plaintiff's counsel certify that they have now conducted an assessment in each case to avoid frivolous claims. Such an inquiry should include, at a minimum, by speaking with the plaintiff and checking dockets and other publicly available information. When a plaintiff lawyer determines that a case is duplicative or asserts claims that have been resolved or extinguished, then voluntary dismissal should follow.[5] Similar voluntary actions should follow depending on the particular circumstances, but these plaintiffs should be encouraged to take such actions based on the Court's authority to shift costs and fees in the event that involuntary dismissal is obtained after a refusal to dismiss.[6] *See* 28 U.S.C. § 1927

---

[5] There are also cases pending in other courts for the same plaintiffs based on the same operative facts. This is particularly true as to the coordinated proceeding in Rhode Island state court. In many instances, the plaintiff's case pending in this MDL was filed second and yet many counsel have failed to dismiss their later-filed cases after Bard provided notice. The existence of previously filed cases for the same plaintiff, regardless of where filed, should have been ascertained by counsel before filing a case in this MDL. Based on principles of comity, these cases should also be identified and subject to dismissal.

[6] There are a number of potential fact patterns related to duplicative cases. For instance, multiple cases in this MDL relating to the same claims against Bard or where a case asserts only claims that have been resolved or extinguished should result in dismissals. Where a plaintiff has brought two separate suits in the MDL relating to two different devices, then consolidation to one case may be appropriate. Where a plaintiff asserts claims, some but all of which have been resolved or extinguished, then a plaintiff may elect to dismiss or amend the SFC. Where an order conditions re-filing on paying Bard's fees in connection with obtaining the prior order of dismissal, then a plaintiff may elect to dismiss or proceed after paying fees. None of these presents particularly complicated legal issues for plaintiff's

(authorizing costs and fees from attorney conduct that "multiplies the proceedings in any case unreasonably and vexatiously"); *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) ("Section 1927 sanctions are warranted when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'") (quoting *In re Ruben*, 825 F.2d at 984).

The benefit to the MDL from requiring certification of these assessments now should be obvious.  In addition to dismissing or transferring cases that should not be pending in this MDL, after these assessments, the parties and the Court will be in better position to identify common issues to resolve through motion practice without extensive case-specific discovery.  Cases that remain after voluntary dismissals and motions will be in better position to be litigated on their merits, individually and collectively.

## C.     Docket Control Orders Do Not Require Prior Settlement

In other proceedings, the argument against a docket control or *Lone* Pine order is often that such an order is not appropriate until there has been a large-scale settlement.  While this may be a more palatable way of saying that even frivolous cases should be allowed to remain pending without challenge, settlement activity "has never been deemed a condition precedent" to a *Lone Pine* order.  *In re Fosamax*, 2012 U.S. Dist. LEXIS 166734, at *8.

Although *Lone Pine* orders have been entered in an MDL setting as to non-settling plaintiffs after there has been a large-scale settlement, *see, e.g.*, *In re Xarelto,* 2021 U.S. Dist. LEXIS 25296; *In re TRT*, 2018 U.S. Dist. LEXIS 205125, settlement activity is *not* a "necessary predicate" for the issuance of such an order.  *In re Fosamax*, 2012 U.S. Dist. LEXIS 166734, at *7-*8; *see also In re Zostavax*, 2022 U.S. Dist. LEXIS, at *1, *7, *8 (granting *Lone Pine* order

counsel, particularly those who have filed large numbers of cases in this MDL.

requiring production of lab reports on plaintiffs' alleged rashes without prior settlement). As the *In re Fosamax* court stated in issuing a thorough docket control order over vigorous plaintiff opposition:

> The Court can discern no rationale for requiring parties to have reached a settlement – or be on the brink of settlement – before considering a *Lone Pine* order. Indeed, the primary purpose of *Lone Pine* orders is to eliminate meritless claims, which is at best tangentially related to the status of settlement negotiations.

*Id.* at *8. Indeed, it remains true today as it was at the time of *In re Fosamax* that settlement is not a prerequisite for the entry of a *Lone Pine* docket control order.

The number of pending cases in this MDL, which continues to rise, is also consistent with the posture of a number of MDLs when they issued orders imposing requirements for basic proof. The *Fosamax* MDL had about 1000 pending cases when its order issued. *Id.* at *2-3. *TRT* had over 7700 cases when it issued its order, *Cook IVC* had about 8200 pending cases when it issued its second order, and *In re Vioxx* had 8575 cases with 23,450 plaintiffs when it issued its first order. *See In re TRT*, 2018 U.S. Dist. LEXIS 205125, *416; JPML data, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-May-16-2022.pdf; Minute Entry, *In re Vioxx Prods. Liab. Litig.*, 2:05-md-01657-EEF-DEK, ECF No. 12626, at 7 (E.D. La. Oct. 11, 2007), attached hereto as **Exhibit 8**. In other words, *Lone Pine* or docket control orders have not been reserved only for cases with significantly fewer or significantly larger number of cases than this MDL has now.

Thus, the current posture of this MDL in terms of its settlement history and size is consistent with other MDLs when they imposed requirements similar to what Bard seeks here. As set out above, the provisions that Bard is requesting will be critical to the future of this litigation, regardless of whether there is any large-scale resolution any time soon.

**D.      This MDL Is Ripe For A *Lone Pine* Docket Control Order**

In its roughly three-and-a-half years of existence, the MDL has moved at a fast pace, with extensive generic fact and expert discovery and verdicts in two bellwether trials. Perhaps more importantly, the pace of case filings and the change in the nature of the inventory of cases over time (e.g., the percentage of PIP cases) remove any doubt that the MDL is mature and ripe for an order that would require current and future cases to provide certain key records and certifications that basic assessments have been made and core proof exists. The information available on the vast majority of cases comes from SFCs and PPFs only but even that limited information reveals a number of concerns about cases filed without cognizable injuries or otherwise lacking merit.

At this stage, a *Lone Pine* docket control order could both "cull potentially meritless claims," *Baker*, 2007 U.S. Dist. LEXIS 6601, at *2, and assist the parties in assessing the remaining inventory of cases. With more than 16,800 pending cases and more being filed each week, the justification for a pre-settlement *Lone Pine* order here is even greater than in *In re Fosamax*, where there was only a ***static*** volume of 1,000 cases pending. *In re Fosamax*, 2012 U.S. Dist. LEXIS 166734, at *6. There is no reason that more time should pass before meaningful requirements are imposed.

Particularly for those cases that have been on the docket for several months or years now, this is "merely ask[ing] them to produce information they should already have." *Id.* (citation omitted); *see also In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 1871, 2010 WL 4720335 (E.D. Pa. Nov. 15, 2010) (requiring production of "information which plaintiffs and their counsel should have possessed before filing their claims"); *In re Vioxx*, 557 F. Supp. 2d at 744 ("[I]t is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury. . . . Surely if Plaintiffs' counsel believe that such claims have merit, they must have some basis for that belief[.]"). At an "age" of 45 months since

the JPML's centralization order of August 2. 2018, this MDL is roughly as "old" as a number of the MDLs where when they issued the docket control orders discussed above.  The *3M Combat Arms* MDL was 37 months old when it issued order earlier this month.  *In re 3M Combat Arms*, **Exhibit 2**.  The *Vioxx* MDL was 33 months old, *Zostavax* was 44 months old, *Physiomesh* was 47 months old, *TRT* was 48 months old, and *Xarelto* was 51 months old.  *See In re Vioxx*, 557 F. Supp. 2d at 742-45 (referring to November 2007 order); *In re Zostavax*, 2022 U.S. Dist. LEXIS 57935; *In re Physiomesh*, **Exhibit 5**; *In re TRT*, 2018 U.S. Dist. LEXIS 205125; *In re Xarelto*, 2021 U.S. Dist. LEXIS 25296, at *7-*8 (referring to March 2019 order).  While it is difficult to compare all the markers of progress between MDLs, this MDL is arguably at least as far along as these six other MDLs were when the first docket control or *Lone Pine* order was issued.  This MDL also has continued high rates of case filings despite its maturity.  Similar to the *Cook IVC Filter* MDL, where the orders detailed above followed a pattern of refusal to dismiss PIP and no injury cases, this MDL has also seen the failed promise that PIP cases would be limited to special circumstances.  The increasing number of cases without apparent compensable injuries weighs in favor of taking steps now to discourage future filing of similar cases.

The same goes for cases that do not belong in the MDL because they are time barred, lack proof of implant with a covered device, are duplicates, or have been resolved.  Plaintiff's counsel should have evaluated these issues before filing and mustered the documents and information they would need to address these issues.  *See also Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (holding that district court was within its discretion to issue a scheduling order that "essentially required that information that plaintiffs should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3)" be produced); *Trujillo v. Ametek, Inc.*, Case No. 3:15-cv-1394-GPC-BGS, 2016 U.S. Dist. LEXIS 84834, at *12 (S.D. Cal. June 28, 2016) (finding that

*Lone Pine* order "essentially require[d] that information which plaintiffs should have had before filing their claims") (internal citation omitted).  With more than 16,800 pending cases, there is every reason to take steps now to cull out cases that should not be pending in this MDL and, if necessary, start the process of briefing to obtain involuntary dismissals of cases plaintiffs refuse to dismiss.  There is no conceivable reason why this process should be delayed.

Winnowing cases, whether because they have no proof of a medical diagnosis of compensable injury, lack product identification concerning a covered device, are time-barred, or are duplicates of pending or resolved cases, will have profound positive impacts on the MDL.  In addition to providing the parties with a true picture of potentially meritorious cases, the remaining cases may be worked up on their merits, in the fashion the Court deems appropriate, without the waste inherent patently non-meritorious cases.

## **CONCLUSION**

For the reasons stated above, the Court should enter a docket control order consistent with the Proposed Case Management Order to require production of evidence of a medical diagnosis of compensable injury, proof of implant with a covered device for this MDL, and certification that plaintiff's counsel has conducted an assessment of basic issues that bear on whether a case should be pending in this proceeding.  Assessment of cases in the MDL has been complicated by the number of pending cases that lack a compensable injury, are time-barred, or otherwise should not be in this MDL.  A docket control order at this juncture would assist in gaining control of the docket and fostering an environment conducive to conclusion.

DATED:  May 27, 2022             Respectfully submitted,

            */s/Michael K. Brown*

            Michael K. Brown
            REED SMITH LLP
            355 South Grand Avenue, Suite 2900
            Los Angeles, CA  90071-1514
            Telephone: (213) 457-8000
            mkbrown@reedsmith.com

            Eric L. Alexander
            REED SMITH LLP
            1301 K St., NW
            Suite 1000-East Tower
            Washington, D.C. 20005
            Telephone: (202) 414-9200
            ealexander@reedsmith.com

            Lori G. Cohen
            GREENBERG TRAURIG, LLP
            Terminus 200
            3333 Piedmont Road NE
            Suite 2500
            Atlanta, GA 30305
            (678) 553-2385
            cohenl@gtlaw.com

            *Co-Lead Counsel for Defendants C. R. Bard,*
            *Inc. and Davol Inc.*

            William D. Kloss, Jr.
            Vorys Sater Seymour and Pease
            52 East Gay Street
            Columbus, OH 43215
            (614) 464-6202
            wdklossjr@vorys.com
            hageigel@vorys.com
            akminer@vorys.com

            *Liaison counsel for Defendants C. R. Bard, Inc.*
            *and Davol Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of this electronic filing to all counsel of record.

*/s/ Michael K. Brown*

Michael K. Brown
